**UNITED STATES of America, Plaintiff,**

v.

**INTERNATIONAL BROTHERHOOD OF TEAMSTERS, CHAUFFEURS, WAREHOUSEMEN AND HELPERS OF AMERICA, AFL–CIO, et al., Defendants.**

No. 88 CIV. 4486 (DNE).

United States District Court,
S.D. New York.

Nov. 6, 1989.

Otto G. Obermaier, U.S. Atty., S.D.N.Y. (Randy M. Mastro, Edward T. Ferguson, III, Richard Mark and Peter Sprung, of counsel), New York City, for U.S.

William Grady, Gen. Counsel, and Mudge, Rose, Guthrie, Alexander & Ferdon (Audrey Strauss and Jed Rakoff, of coun-sel), New York City, for International Brotherhood of Teamsters.

Frederick B. Lacey and Stuart Alderoty, Newark, N.J., for the Independent Adm'r.

## ORDER

EDELSTEIN, District Judge:

This order arises from an October 27, 1989 motion by the defendants International Brotherhood of Teamsters (the "IBT") seeking to stay and certify for appeal the October 18 rulings of this Court (the "Interpretation Opinion"), interpreting various issues arising from the implementation of the voluntary settlement between the IBT and the plaintiff United States of America (the "Government") effected March 14, 1989 (the "Consent Decree"). The Consent Decree called for the appointment of three officials; an Independent Administrator, Investigations Officer, and Election Officer (the "Court Officers") to oversee the IBT's 1991 election and bring charges against corrupt IBT members. The Interpretation Opinion settled conflicts between the IBT and the Court Officers on the scope of duties of the Election Officer and resolved funding disputes.

### I. Certification

Specifically, the IBT seeks certification of four rulings;

(1) The interpretation of the terms "supervise" and "1991 election" at issue in Application II by the Independent Administrator and the IBT's Cross–Application. This question includes decisions on the scope of the Election Officer's duties and the IBT's funding obligations for his activities;

(2) The establishment of the $100,000 general operating fund;

(3) The revised funding procedure for objecting to the expenses of the Court Officers;

(4) The procedures determined for the filing of Applications with the Court.

Summarily, 28 U.S.C. § 1292(b) provides that District Courts may certify questions for appeal that (1) involve a controlling

question of law; (2) as to which there is substantial ground for difference of opinion; and (3) an immediate appeal from the order may materially advance the ultimate termination of litigation.

■ In applying the IBT's arguments for certification to the above criteria, I find that the IBT has failed to meet the first standard for certifying questions for appeal, and therefore deny their motion for certification.

At the outset, Courts interpreting § 1292(b) as a whole find that District Courts should certify questions under § 1292(b) in the limited circumstances when "their resolution would avoid a lengthy trial and 'determination was likely to have precedential value for a large number of other suits.'" *Abortion Rights Mobilization, Inc. v. Regan*, 552 F.Supp. 364, 366 (S.D.N.Y.1982) *quoting Brown v. Bullock*, 294 F.2d 415, 417 (2d Cir.1961) (J. Friendly). Once meeting these threshold criteria, certification should be limited to "extraordinary cases where early appellate review might avoid protracted and expensive litigation. It is not intended as a vehicle to provide early review of difficult rulings in hard cases." *Abortion Rights, supra.*

The four questions the IBT seeks to have certified fail to satisfy these threshold criteria. First, the IBT is appealing rulings interpreting a Consent Decree, and the determination of these rulings will have no bearing on any trial. The only issues in contest are determining how the limited language of the Consent Decree should be interpreted as applied to the myriad of disputes that arise in implementing a Consent Decree of such scope. Second, these rulings have little precedential scope for other actions: At best, an interlocutory appeal should diminish repeated litigation by the IBT, but here, it would most likely encourage the IBT, or more generally any losing party to interlocutorily appeal each and every ruling of this Court with respect to this Consent Decree. Finally, in reality this motion for appeal by IBT seeks early review of difficult rulings arising from an admittedly hard case. Unfortunately, certification is not the proper avenue to redress those rulings.

Certification must also be denied since there is no controlling question of law over which there is substantial grounds for difference of opinion. In sum, the IBT argues that the four rulings over which they seek certification are controlling questions of law for the three-year duration of the Consent Decree. More specifically, they argue that this Court's rulings on Application II—delineating the scope of the Election Officer's duties—would have significant impact on the remainder of the Consent Decree.

The real gist of the IBT's argument, however, is that individually and collectively, all four of the above rulings constitute an unwarranted expansion of the written provisions of the Consent Decree. They concede that these rulings will have a significant effect on the implementation of the Consent Decree.

■ All parties, including the IBT, understand that the controlling principle of law guiding this Court should be that under *United States v. Armour & Co.*, 402 U.S. 673, 683, 91 S.Ct. 1752, 1758, 29 L.Ed.2d 256 (1971) and *Securities and Exchange Commission v. Levine*, 881 F.2d 1165, 1178–1179 (2d Cir.1989), consent decrees must be interpreted according to their writings. The IBT, however, believes that in addition to the rule of *Armour* and *Levine*, the four rulings themselves constitute controlling principles of law.

The Independent Administrator and the Government argue that the IBT mischaracterizes the requirement of a controlling question of law. Both of these parties agree that the principle of *Armour* and *Levine*—that consent decrees must be interpreted according to their terms—is not in dispute. All sides agree that the terms of the Consent Decree should be binding, and, this argument continues, the IBT seeks to appeal the Court's interpretation of the facts as applied to this undisputed question of law.

■ The rulings in the Interpretation Opinion did not constitute controlling ques-

tions of law, but instead applied the undisputed rule of *Armour* and *Levine* to the disputes that arose over the implementation of the Consent Decree. First, the ruling setting forth the scope of the Election Officer's duties was strictly an interpretation of the explicit language of the Consent Decree. Both sides sharply disputed their respective subjective understandings as to what "supervise" and "1991 election" were to encompass. The Interpretation Opinion decided between the varying accounts.

Second, the $100,000 fund neither expanded substantive rights under the Consent Decree nor altered its plain meaning. The IBT contends that since the Consent Decree was silent as to the creation of such a fund, then its creation must be an impermissible expansion of its terms. In addition, the IBT makes the same arguments respecting the third ruling, giving the IBT three business days to object to bills submitted by the Court Officers. Neither of these provisions alters the substantive rights of the IBT one iota: Rather, they ease the funding burden now borne by the Court Officers. The IBT may still contest expenditures it deems inappropriate, insist on complete accountings of expenses, and in the process protect its members monies. Further, the $100,000 fund provides for current funds for the Court Officers, and since the IBT's oversight results in significant funding delays, the fund allows them to continue their work.

Finally, the IBT fundamentally misunderstands this Court's ruling with respect to Application procedure. Paragraph F.12(I) of the Consent Decree spells out the procedure the Independent Administrator must follow when filing Applications with the Court. These procedural requirements include giving notice of the Application to the Government, the IBT and its outside counsel. Paragraph K.16 further allows any party to file applications to the Court. The Interpretation Opinion held that all parties making applications must file them according to the same procedure required of the Independent Administrator. Somehow, the IBT understood this ruling to mean that it must file all applications though the Independent Administrator.

This ruling merely requires all parties to give the same notice of applications, and further, asked the parties to notify the Court.

## II. Stay of Rulings

■ The IBT seeks a stay of the disputed rulings of the Interpretation Opinion, arguing that a stay would serve the interests of justice. The IBT wants to stop the Court Officers from carrying out their work pending resolution of the appeal. Further, the IBT argues that since they have filed for an expedited appeal, no prejudice would inure from a stay, but in contrast they stand to lose a significant amount financially.

The standards for issuing a stay encompass the following considerations:

> (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether the issuance of a stay will substantially injure other parties interested in the proceeding; and (4) where the public interest lies.

*Hilton v. Braunskill,* 481 U.S. 770, 776, 107 S.Ct. 2113, 2119, 95 L.Ed.2d 724 (1987). Applying these criteria to the instant motion, I find that IBT has failed to meet these criteria and the stay should be denied.

First, the previous section of this order indicates that the IBT has not made a strong showing that they are likely to succeed on the merits. Second, even granting all of the IBT's arguments, the only irreparable injury the IBT may suffer is financial loss from *ultra vires* activity by the Election Officer and the streamlining of the funding process. In this circuit, identifiable financial loss does not constitute irreparable harm. *Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.,* 596 F.2d 70, 72 (2d Cir.1979). Third, staying the rulings may indeed cause further injury to the Court Officers, who would then continue to bear the burden of the IBT's financial scrutiny and continue to work without funding.

Finally, the ultimate goal of the Consent Decree is to guarantee free elections and rid the IBT of the hideous influence of organized crime. These goals seem squarely in the interest of the IBT rank and file membership, and the public as a whole. This Court cannot avoid the inescapable conclusion that the IBT's true intention is to delay and hinder the work of the Court Officers so that their three year term will expire without significant reforms. The only argument the IBT may muster that these actions are truly in its membership's interest is that the financial scrutiny saves its members money. This Court applauds the efforts of the IBT to control costs, and these rulings in no way impair that obligation.

Accordingly, the IBT's motion for a stay of the rulings is hereby denied.

SO ORDERED.