**CONTRACTORS ASSOCIATION OF EASTERN PENNSYLVANIA, et al., Plaintiffs,**

v.

**CITY OF PHILADELPHIA, et al., Defendants,**

and

**United Minority Enterprise Associates, Inc., Intervening Defendants.**

**Civ. A. No. 89–2737.**

United States District Court, E.D. Pennsylvania.

April 17, 1990.

---

**228**

John J. McAleese, Jr., Thomas J. McGoldrick, John H. Widman, King of Prussia, Pa., for plaintiffs.

Charisse R. Lillie, Seymour Kurland, Robert T. Vance, Jr., Carl E. Singley, Charles W. Bowser, Luther E. Weaver, III, James P. Cousounis, Philadelphia, Pa., Charles C. Hileman, Richard S. Mailman, Wyncote, Pa., for defendants.

## MEMORANDUM AND ORDER

BECHTLE, Chief Judge.

Presently before the court is the motion of defendants and intervening defendant for a stay of the injunctive relief entered by this court's April 5, 1990 Order 735 F.Supp. 1274, pending appeal before the Court of Appeals for the Third Circuit. The April 5, 1990 Order declared unconstitutional the minority, female and handicapped set-aside programs set forth at Chapter 17–500 of the Philadelphia Code [the "Ordinance"] and permanently enjoined the defendants from enforcing or implementing the Ordinance.

As will be discussed below, contracts that are part of the city procurement process pass through various stages prior to becoming finally executed contracts binding on both parties. This memorandum addresses the appropriateness of a stay with regard to all types of city contracts to which Chapter 17–500 has been applied in each of these various stages, including: contracts for which the city is contemplating advertising or soliciting bids; contracts that are currently being advertised; contracts that are "on the street;" contracts that have been opened but not awarded; contracts that have been awarded but not yet signed by a city official; and contracts

that have been signed (and thus fully executed) *on April 5, 1990 or thereafter.*

This memorandum does not address contracts that were awarded and fully executed—those contracts that the city has signed and on which it has become legally obligated—*prior to April 5, 1990.* The city was contractually bound on these contracts prior to the courts ruling, and thus, in the absence of an extraordinary showing to the contrary, these contracts are not subject to the injunction issued in the court's April 5, 1990 Order. Thus, by this Memorandum and Order, the court does not address the appropriateness of a stay with regard to those contracts executed prior to April 5, 1990.

■ Rule 62(c) of the Federal Rules for Civil Procedure authorizes a trial court to suspend, modify, restore, or grant an injunction during the pendency of an appeal in injunction cases. Fed.R.Civ.P. 62(c). A trial court has complete discretion to decide whether a stay pending appeal of an injunction is appropriate. *Id.* It is generally required that to obtain a stay of an injunction pending appeal the moving party (defendants) must show: (a) the likelihood of success on the merits of the appeal; (b) irreparable injury to the party seeking the stay from denial of a stay; (c) no substantial harm to the opposing party, and (d) the public interest favors the grant of a stay. *See Hilton v. Braunskill,* 481 U.S. 770, 776, 107 S.Ct. 2113, 2119, 95 L.Ed.2d 724 (1987). The application of these factors contemplates individualized judgments in each case. *Id.* at 777, 107 S.Ct. at 2119. If the court is satisfied that these considerations or other relevant considerations indicate that an injunction should be stayed pending appeal, a stay will be granted. Otherwise the stay will be denied. 11 Wright & Miller, Federal Practice and Procedure § 2904 (1973).

The defendants have requested a stay with regard to three types of contracts: supplies, services and equipment; public works; and professional services. Because the analysis of the appropriateness of a stay varies depending on the stage of the procurement process, the court will briefly

outline the process in each of the three types of contracts.

Contracts for supplies, services and equipment and contracts for public works are both part of the bidding process, and the procedure is essentially the same. Contracts for supplies, services and equipment pass through the following stages: the office of procurement requests a description of the product; the product is advertized for two weeks (if valued greater than $2,000); the bids are opened publicly and read (generally about four weeks later, although this varies); the bids are evaluated for award; the award is granted; a city official signs the award, thereby obligating the city on the contract. Contracts for public works are procured as follows: the operating department develops specifications; the project is advertized for two weeks; bid opening is scheduled; bids are opened; bids are evaluated; the operating department makes a recommendation on an award; the office of procurement decides on the award; a city official signs the award, thereby obligating the city on the contract.

Contracts for professional services are not awarded through a bidding process. The city solicitor's office oversees the letting of these contracts. They are awarded as follows: a request-for-proposal is sent out or the contract is advertised or issued to interested partes; the solicitor's office decides the award; the award is executed.

■ Because contracts for supplies, services and equipment and for public works are both awarded through the bidding process, and accordingly pass through the same stages, the court will examine them together to determine the appropriateness of a stay in the various stages.

A district court may grant a stay pending appeal if an examination of the four factors stated above appears, in the court's discretion, to warrant a stay. First, the defendants must make a strong showing that they are likely to succeed on the merits on appeal. At the April 11, 1990 hearing on defendants' motion for a stay pending appeal, defendants thoroughly outlined for the court their arguments as to why this court's Order was incorrect. For the reasons explained in the court's 89–page Order entered on April 5, 1990, it is the court's belief that defendants have little likelihood of success on the merits.

Second, defendants must show that no substantial harm will come to other interested parties. The court's April 5, 1990 Order permanently enjoined defendants from enforcing the minority, female and handicapped set-aside programs set forth at Chapter 17–500 of the Philadelphia Code as a result of the court's finding that the Ordinance violated the plaintiffs' rights under the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution. As part of that ruling, the court declared the Ordinance unconstitutional. To approve a stay would enable the defendants to continue to enforce an Ordinance that is, in the court's analysis, a violation of the plaintiffs' constitutional rights. The court thus cannot agree that granting the stay will bring no substantial harm to other interested parties.

Third, defendants have the burden of showing that they will suffer irreparable injury unless a stay is granted. Defendants have shown the court, through charts as well as live testimony, that the court's ruling will effect approximately 2,027 bids in both services, supplies and equipment and public work categories, valued at a total of approximately $73,533,000. The court agrees that these are large numbers, and understands that this may inconvenience the city. However, the court believes that more is needed to meet the irreparable injury requirement of Fed.R.Civ.P. 62(c).

With regard to contracts that are not yet advertised, failure to grant a stay will not cause defendants irreparable injury. Presumably, the only action defendants need take with respect to contracts not yet advertised to comply with the court's April 5, 1990 Order would be to write the advertisement without any reference to a minority, female or handicap set aside requirement. This places a minimal burden, if any, on city resources. For bids that have already been advertised, the city can issue a "change order" simply deleting any refer-

ence in the advertisement to the set-aside requirement. In addition, the city can issue a change in any general advertisements, stating that contractors bidding on city contracts no longer need comply with the set-aside requirements.

With regard to bids "on the street," the stage where contractors are notified that bids are ready for pickup and a bid opening date is set, the city can also comply with the injunction by sending out an "addendum" or a change order. Angela Dowd–Burton, Procurement Commissioner for the City of Philadelphia, testified that issuing "change orders" is a relatively easy, routine practice that the city undertakes whenever there has been a change in the bid requirements. The city maintains lists of bidders for the very purpose of notifying bidders through an "addendum" should any change arise. Although Ms. Dowd–Burton testified that there are approximately 160–200 bids "on the street," the court finds that issuing the appropriate change orders would impose little administrative inconvenience, as it is routinely done when the need arises, and places a minimal financial burden on the city. Although a delay in the bidding process may arise because of the need to suspend bidding while the change is advertised and then to later reactivate bidding, the court finds that this delay, probably less than four to six weeks, does not rise to the level of irreparable injury. As evidence of this, Ms. Dowd–Burton in her testimony about the school lunch program, a project involving the delivery of lunch to children in the area for summer 1990, stated on cross-examination that there would be "no difficulty at all" in sending addendum to the six bidders notifying them that compliance with Chapter 17–500 is no longer necessary. Ms. Dowd–Burton indicated that the delay in the process would amount to approximately one week.

For bids that are "opened," (*i.e.*, bids that have been publicly opened), and thus in the process of being awarded, the court agrees that a stay could be awarded based on a showing of irreparable injury. The court agrees that at the "opening" stage, the bidding process is well underway and

there may be sufficient reliance on the set-aside or substantial time and effort expended in the decision regarding the award that the defendants would suffer irreparable injury should the injunction be enforced. However, defendants presented the court with no such evidence of irreparable injury. It is not the court's obligation under Fed.R.Civ.P. 62(c) to construe irreparable injury from information the court may have about the procurement process; rather, it is the defendants' burden to affirmatively show irreparable injury. Defendants have not done so.

At the stage where bids have been awarded, the contractor has been notified and all that is required is the city official's signature, the court also can envision hardship for the defendants where the city would be required to enforce the injunction. As with bids that have been opened but not yet awarded, the court concedes that at such a late stage the administrative burden, cost, or delay may be so great that the city could show irreparable injury. However, no such showing was made. Simply telling the court that there are numerous contracts at this stage does not satisfy the requirement that defendants prove irreparable injury.

Finally, the city could perhaps have demonstrated irreparable injury with regard to any contracts that have been signed by the city (on which the city has become contractually bound) *after* April 5, 1990. However, the city presented no testimony to the court describing why *rebidding* contracts after they have been signed would cause irreparable injury. Had they presented such evidence, a stay with respect to this category of contracts may have been warranted.

■ The city also seeks a stay of the court's April 5, 1990 order as it impacts contracts for professional services. Barbara Potts, Chief Deputy Solicitor for the City of Philadelphia, testified before the court at the April 11, 1990 hearing on the subject of professional services contracts on behalf of the City Solicitor's Office—the department that awards this type of con-

tracts. Ms. Potts told the court that approximately 218 contracts with the city involve professional services, at a total value of more than $99,000,000. Ms. Potts was not aware of the number of contracts for which request-for-proposals are being advertised now, or that had been issued prior to April 5, 1990. Ms. Potts did state that to comply with the injunction the city must do more than simply cease applying the Ordinance, because there may be some contracts outstanding that non-minority contractors may have sought but for the Ordinance. However, Ms. Potts did not tell the court how the city could comply with the Order, or what burden compliance would place on the city. When asked what impact suspension of the operation of the Ordinance would have on the city, Ms. Potts had no response. She did, however, mention that some contracts may need to be re-let, whereas those with amendments could easily be changed.

The court finds that, although Ms. Potts' testimony did provide the court with information on the awarding of professional services contracts, it did not affirmatively demonstrate the irreparable injury necessary to merit a stay of this court's Order with respect to professional services contracts. In so finding, the court understands the potential inconvenience and burden, the injunction may be causing the city, at least with respect to contracts far along in the procurement process. However, the irreparable injury requirement demands much more of a party seeking a stay pending appeal than simply asking the issuing court to infer the alleged harm caused by its injunction.

The final factor the court must consider is whether the public interest favors a stay. The court's analysis of this factor has little impact on its decision regarding the stay. The intervening defendant suggests that the injunction will force many minority business enterprises out of business.[1] If that were true, certainly the public interest would dictate against enforcement of the court's Order. However, as discussed, because the court found that the Ordinance was unconstitutional, continuing enforcement of it would also be contrary to the public interest. In particular, enforcement of the Ordinance is certainly adverse to the interests of the non-minority contractors who have shown to the court that the Ordinance caused them injury in fact. Because the public interest factor cuts both ways depending on the perspective, it does not persuade the court that a stay is appropriate.

Because the court does not find that defendants have a likelihood of success on the merits on appeal, the defendants have not demonstrated irreparable injury from denial of a stay, and granting a stay would cause substantial harm to the plaintiffs, the court will deny the defendants' motion for a stay pending appeal.

An appropriate order will be entered.

---

1. However, the intervening defendant presented no evidence to support this assertion.