KATHLEEN S., et al.

v.

DEPARTMENT OF PUBLIC WELFARE OF THE COMMONWEALTH OF PENNSYLVANIA, et al.

No. CIV.A. 97–6610.

United States District Court,
E.D. Pennsylvania.

July 30, 1998.

Robert W. Meek, Philadelphia, PA, Robin Resnick, Disabilities Law Project, Mark J. Murphy, Disabilities Law Project, Pittsburgh, PA, for plaintiffs.

Barry N. Kramer, Howard Ulan, Daniel Fellin, Department of Public Welfare, Office of Legal Counsel, Philadelphia, PA, for defendants.

*MEMORANDUM*

RAYMOND J. BRODERICK, District Judge.

Presently before the Court is a motion for stay pending appeal brought pursuant to Fed.R.Civ.P. 62(c) by the Defendants the Department of Public Welfare of the Commonwealth of Pennsylvania and Feather O. Houstoun in her official capacity as Secretary of Public Welfare (collectively "the Commonwealth"). In a Memorandum and Order dated June 26, 1998, this Court entered judgment in this class action in favor of the Plaintiff class, who are all individuals with mental illness who resided as of August 26, 1997, at Haverford State Hospital, a state psychiatric hospital which was closed on June 30, 1998. The Court found that the Commonwealth had violated the Americans with Disabilities Act, 42 U.S.C. § 12132, 28 C.F.R. § 35.130(d) and 28 C.F.R. § 35.130(b)(3), in that the Commonwealth had discriminated against those members of the Plaintiff class whom the Commonwealth had evaluated as appropriate for treatment in the community but for whom no appropriate treatment was available in the community due to the Commonwealth's failure to adequately plan and develop appropriate community placements, and thus these class members remained unnecessarily segregated for an unreasonable period of time.

Specifically, the Court found the following:

1. The Commonwealth discriminated against a group which recent reports have established consists of 83 class members who had been unnecessarily segregated at Haverford State Hospital since at least October 27, 1997, when Plaintiffs filed this lawsuit, and the Court ordered that the Commonwealth follow through on its plan to place those 83 individuals in appropriate community settings no later than June 30, 1998.

2. The Commonwealth discriminated against another group which recent reports have established consists of 104 class members whom the Commonwealth transferred to Norristown State Hospital upon the closing of Haverford State Hospital, despite the fact that the Commonwealth had determined that these 104 class members are appropriate for treatment in the community. The Commonwealth planned to place those 104 class members in appropriate community placements over the next three years, or by June 30, 2001. The Court found that three years is an unreasonable amount of time for these 104 class members to remain unnecessarily segregated, and the Court ordered the Commonwealth to provide these class members with community treatment appropriate to their needs by December 31, 1999, or eighteen months from the date of the Court's Order.

3. The Court also found that the interests of justice required that the Commonwealth reevaluate a group which recent reports have established consists of 69 class members who had previously been found by the Commonwealth to be inappropriate for community placement. However, evidence having shown that there were conflicting views among the experts concerning some of these evaluations, the Court ordered that current evaluations be conducted by an independent psychologist or psychiatrist no later than December 31, 1998, in order to determine the appropriateness of these 69 class members for community placement. The Court also ordered that the Commonwealth provide members of this group with treatment in the community eighteen months after a determination is made that the class member is appropriate for community placement.

On July 2, 1998, the Commonwealth filed a Notice of Appeal to the Third Circuit Court of Appeals, and thereafter filed with this Court the instant motion for a stay pending appeal. For the reasons stated below, the Commonwealth's motion for a stay pending appeal will be denied.

Federal Rule of Civil Procedure 62(c) provides in pertinent part that "[w]hen an appeal is taken from ... [a] final judgment granting, dissolving, or denying an injunction, the court in its discretion may suspend, modify, restore, or grant an injunction during the pendency of the appeal...." It is well established that a district court is required to consider the following factors regarding the issuance of a stay pending appeal: (1) whether the stay applicant has made a strong showing of the likelihood of success on the merits; (2) whether the applicant will be

irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies. *Hilton v. Braunskill,* 481 U.S. 770, 776, 107 S.Ct. 2113, 2119, 95 L.Ed.2d 724 (1987); *Republic of Philippines v. Westinghouse Electric Corp.,* 949 F.2d 653, 658 (3rd Cir. 1991). The United States Supreme Court has noted that "the traditional stay factors contemplate individualized judgments in each case." *Hilton,* 481 U.S. at 777, 107 S.Ct. at 2119.

*Likelihood of Success on Appeal*

■ The Commonwealth has failed to demonstrate the likelihood of its success on appeal. There can be no question that the ADA prohibits discrimination against disabled individuals such as the members of the Plaintiff class, all of whom have been diagnosed with a mental illness. The ADA provides that

no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.

42 U.S.C. § 12132. A "disability" is defined by the ADA as "a physical or mental impairment that substantially limits one or more of the major life activities of such individual." 42 U.S.C. § 12102(2)(A). The Department of Justice, which was directed by Congress to promulgate regulations necessary to implement the ADA, *see* 42 U.S.C. § 12134(a), defined "physical or mental impairment" as "[a]ny mental or psychological disorder such as ... organic brain syndrome, emotional or mental illness, and specific learning disabilities." 28 C.F.R. § 35.104.

There can likewise be no question that the ADA prohibits discrimination, including unnecessary segregation, against members of the Plaintiff class whom the medical experts have determined are appropriate for treatment in the community. In passing the ADA, Congress found that "discrimination against individuals with disabilities persists in such critical areas as ... institutionalization," 42 U.S.C. § 12101(a)(3). Congress identified the segregation of the disabled

from the mainstream of American life as a form of discrimination, noting in its findings that, "[h]istorically, society has tended to isolate and segregate individuals with disabilities, and ... such forms of discrimination ... continue to be a serious and pervasive social problem." 42 U.S.C. § 12101(a)(2). Congress also concluded that "[i]ndividuals with disabilities continually encounter various forms of discrimination, including ... segregation...." 42 U.S.C. § 12101(a)(5). The Department of Justice stated that "[i]ntegration is fundamental to the purposes of the Americans with Disabilities Act." 28 C.F.R. Part 35, App. A. § 35.130. Toward that end, the Department of Justice promulgated the following regulation:

A public entity shall administer services, programs, and activities in the most integrated setting appropriate to the needs of qualified individuals with disabilities.

28 C.F.R. § 35.130(d).

Interpreting this regulation as it relates to disabled individuals with mental illness, the Eleventh Circuit concluded that "[b]y definition, where ... the State confines an individual with a disability in an institutionalized setting when community placement is appropriate, the State has violated the core principle underlying the ADA's integration mandate." *L.C. by Zimring v. Olmstead,* 138 F.3d 893, 896. The Eleventh Circuit continued:

Under § 35.130(d), the failure to provide the most integrated services appropriate to the needs of disabled persons constitutes unlawful disability-based discrimination—even though such services may not be needed by nondisabled individuals—because such segregation perpetuates their status as second-class citizens unfit for community life.

*Id.* at 899. The Eleventh Circuit thus held that the state of Georgia was required to provide appropriate community-based services to the plaintiffs, two state psychiatric hospital residents who were qualified for treatment in the community. *Id.* at 901.

The Third Circuit in *Helen L.* likewise concluded that "the ADA and its attendant regulations clearly define unnecessary segre-

gation as a form of illegal discrimination against the disabled." 46 F.3d at 333. The Third Circuit held in that case that the Commonwealth was required to provide services to the plaintiff, who was physically disabled, in her own home through an attendant care program for which she was qualified, rather than in a more segregated nursing home. *Id.* at 327.

As this Court noted at length in its Memorandum of June 26, 1998, it has been the clear intent of Congress to end all forms of discrimination against the disabled since at least 1973, when section 504 of the Rehabilitation Act was passed in response to "one of America's shameful oversights[,] ... the [treatment and] invisibility of the handicapped in America." 117 Cong.Rec. 45974 (1971). When section 504 failed to achieve its purpose of ending disabilities-based discrimination, Congress reiterated its intent to end discrimination against the disabled through passage of the Americans with Disabilities Act in 1990. *See, e.g., Helen L. v.. DiDario,* 46 F.3d 325, 330 (3rd Cir.1995)(shortcomings and deficiencies of section 504 quickly became apparent); Cook, *The Americans with Disabilities Act: The Move to Integration,* 64 Temp.L.Rev. 393, 394–408 (1991)(section 504 not effective remedy for segregated public services). As the United States Supreme Court's recent decisions on the ADA make clear, the ADA is a statute with broad application, intended to end all forms of discrimination against the disabled. *See Pennsylvania Department of Corrections v. Yeskey,* —— U.S. ——, 118 S.Ct. 1952, 141 L.Ed.2d 215(affirming Judge Becker's opinion reported at 118 F.3d 168(3rd Cir.1997))(plain text of Title II of the ADA unambiguously extends to state prison inmates); *Bragdon v. Abbott,* —— U.S. ——, 118 S.Ct. 2196, 141 L.Ed.2d 540(asymptomatic HIV infection is a "disability" under the ADA in that it substantially limits the major life activity of reproduction).

There can be no question, therefore, that under the ADA, the Commonwealth has discriminated against those members of the Plaintiff class who continue to be unnecessarily segregated for an unreasonable period of time at Norristown State Hospital, despite the Commonwealth's evaluation that those class members are appropriate for treatment in a more integrated community setting. Those class members remain unnecessarily segregated at Norristown State Hospital, despite the fact that the community is the most integrated setting appropriate to their needs, because the Commonwealth has failed to adequately plan for and develop the facilities and services needed to treat them in the community. This failure on the part of the Commonwealth, and the resulting unnecessary segregation of class members at Norristown State Hospital—which according to the Commonwealth's plan would have continued for up to three years—is clearly a violation of the ADA's integration mandate.

The Commonwealth raises the following arguments in its motion for a stay to demonstrate its likelihood of success on appeal. First, the Commonwealth argues, as it has throughout this case, that in ordering an accelerated community placement schedule for those class members appropriate for treatment in the community, this Court has in fact ordered "deinstitutionalization," which is not required by the ADA. *Helen L.,* 46 F.3d at 336. As the Court noted at length in its Memorandum of June 26, 1998, it has been the commendable policy of the Commonwealth in the past several years to close state psychiatric institutions and to provide treatment in the community for those for whom it is appropriate. Pursuant to this policy, it was the Commonwealth's decision to close Haverford State Hospital and discharge those residents whom it had evaluated and found appropriate for treatment in a more integrated setting in the community. Plaintiffs have never made a claim that Haverford State Hospital should be closed or that the residents of Haverford State Hospital should be deinstitutionalized. Rather, Plaintiffs claim that the Commonwealth has discriminated against them by continuing to segregate them in an institution rather than serving them in an appropriate community-based program for which they qualify, as required by the ADA regulation which provides that

A public entity shall administer services, programs, and activities in the most inte-

grated setting appropriate to the needs of qualified individuals with disabilities.

28 C.F.R. § 35.130(d). The Third Circuit has clearly distinguished such a claim of discrimination under the ADA's integration mandate from a claim for "deinstitutionalization." *Helen L.*, 46 F.3d at 336. The Commonwealth's argument that this Court has ordered "deinstitutionalization" and that the Commonwealth will therefore likely succeed on appeal is totally without merit.

The Commonwealth further argues that it is likely to succeed on appeal because this Court failed to consider the "significant risk" involved in requiring the Commonwealth to accelerate the rate of community placements for those class members who are currently residing at Norristown State Hospital, but for whom it has been or will be determined that the community is the most integrated setting appropriate to their treatment needs. The Commonwealth claims that the relief this Court has ordered is not required under the ADA because of the "significant risk" involved in accelerating the rate of community placements of class members appropriate for treatment in the community, which "poses a direct threat to the health and safety of others." The Commonwealth relies on a subsection of Title III of the ADA which provides:

Nothing in this subchapter shall require an entity to permit an individual to participate in or benefit from the goods, services, facilities, privileges, advantages and accommodations of such entity where such individual poses a direct threat to the health or safety of others.

42 U.S.C. § 12182(b)(3). The ADA defines a "direct threat" to be "a significant risk to the health or safety of others that cannot be eliminated by modification of policies, practices, or procedures or by the provision of auxiliary aids or services." *Id.* The Defendant's reliance on the "significant risk" provision has no application whatsoever to this Court's determination that the Commonwealth is ordered to provide treatment in the community within eighteen months, rather than three years.

As the Supreme Court recently noted, the "ADA's direct threat provision stems from the recognition in *School Bd. Of Nassau Cty. v. Arline*, 480 U.S. 273, 287, 107 S.Ct. 1123, 1130,1131, 94 L.Ed.2d 307 (1987), of the importance of prohibiting discrimination against individuals with disabilities while protecting others from significant health and safety risks, resulting, for instance, from a contagious disease." *Bragdon v. Abbott,* 118 S.Ct. at 2209. Defendants have produced no evidence even suggesting that any member of the Plaintiff class for whom this Court has ordered accelerated community placement poses any threat whatsoever to members of the public. Once again this Court notes that it has ordered community placements for only those members of the Plaintiff class who have been evaluated by the Commonwealth, or who will be evaluated by an independent psychologist or psychiatrist, as being appropriate for community placement. These assessments include a determination that placing these class members in appropriate community programs will not pose a risk to the class members or the public.

Finally, the Commonwealth contends that nothing in the record supports the Court's conclusion that the eighteen month deadline for placing class members in appropriate community programs can be safely accomplished. On the contrary, the record in this case clearly establishes that based on the Commonwealth's past experience, the community placements ordered by the Court can be safely and efficiently effected within the eighteen month period ordered by the Court. This would require transferring no more than about six members of the class per month into an appropriate community setting. The record shows that over a fifteen month period during the closing of Philadelphia State Hospital, the Commonwealth successfully and safely placed for treatment in the community 120 Philadelphia State Hospital residents, at an average rate of eight community placements per month. Furthermore, the record clearly establishes that it is the consensus of mental health professionals that the knowledge and technology associated with successful community placements has increased tremendously in recent years, which should enable the Commonwealth to

accomplish these placements in a much shorter time.

Therefore, the Court finds that the Commonwealth has failed to meet its burden of showing that it is likely to succeed on appeal.

*Irreparable Injury to the Stay Applicant*

■ Defendants make an interesting claim of irreparable injury. It appears that they claim that in the absence of a stay, the Commonwealth will lose its opportunity for meaningful appeal if they are required to make community placements pursuant to this Court's Order in that the community placements would be accomplished before the Third Circuit rules on the appeal. In effect, the Commonwealth is agreeing that it can accomplish the community placements ordered by this Court in a relatively short period of time. As pointed out above, this Court would consider it to be a happy event should the community placements be accomplished for all members of the Plaintiff class for whom they are appropriate prior to the appellate court's ruling on the appeal.

There is clearly no injury to the Commonwealth in going forward with the planning and development of community placements as this Court has ordered, even if the Commonwealth were to win its appeal. As the record clearly establishes, it is the Commonwealth's laudable policy that people with mental illness can better be treated in the community whenever community treatment is appropriate. As heretofore discussed, the record also clearly establishes that the Commonwealth is perfectly capable of meeting the deadlines this Court has ordered for community placement of those class members who have been or will be determined to be appropriate for treatment in the community. This Court's Order merely assures that the Commonwealth's own goals for the mentally ill are implemented, and the Commonwealth's contention that a failure to stay this Court's Order will bring irreparable injury is without merit.

*Substantial Injury to Other Parties*

■ There can be no doubt that a stay of this Court's Order pending the Commonwealth's appeal would result in substantial injury to the Plaintiff class members who are currently being unnecessarily segregated at Norristown State Hospital, despite the fact that they have been evaluated as appropriate for treatment in the community. It is clear that their continued unnecessary segregation is a form of discrimination which the ADA was intended to eliminate. Obviously a stay of this Court's order will only postpone appropriate placement and treatment in the community, the most integrated setting appropriate to their needs, and these class members are irreparably injured every day they remain unnecessarily segregated in violation of the ADA. As the Plaintiff's psychiatric expert, Dr. Lawrence A. Real, has testified, the continued unnecessary hospitalization of class members beyond the time they are ready for community placement can lead to regression of skills and possibly the delay or eradication of their readiness to live in the community. There could be no greater harm than that faced by these class members should the Court stay its Order requiring the Commonwealth to accelerate its efforts to end its discrimination against them.

*The Public Interest*

There can be no question that a stay of this Court's Order is not in the public's interest. It is clearly in the interest of the public to enforce the mandate of Congress under the Americans with Disabilities Act, requiring the Commonwealth to provide services to class members in the most integrated setting appropriate to their needs. A stay of this Court's Order will only postpone the realization of that mandate for the members of the Plaintiff class, and such delay can in no way promote the public's interest.

Section 504 of the Rehabilitation Act of 1973 sought to end the discrimination of persons with disabilities. Although limited to programs "receiving Federal financial assistance," section 504 did not achieve its purposes of ending disabilities-based discrimination. The Americans with Disabilities Act was enacted by Congress in 1990 to make certain that all people with disabilities be integrated—to the greatest extent possible—into the mainstream of American life. Members of the Plaintiff class concerning whom the Commonwealth has determined that treatment in

the community is appropriate should not be subjected to further delay.

Having carefully considered all of the Commonwealth's contentions, this Court finds that the Commonwealth's application for a stay fails to satisfy the four-part test for granting such stay requests, and consequently fails to meet the requirements of Federal Rule of Civil Procedure 62(c). This Court will therefore enter an Order denying the motion for a stay.

### *ORDER*

**AND NOW,** this 30th day of July, 1998; having considered the motion to stay this Court's order of June 26, 1998, brought pursuant to Federal Rule of Civil Procedure 62(c) by the Defendants Department of Public Welfare of the Commonwealth of Pennsylvania and Feather O. Houstoun in her official capacity as Secretary of Public Welfare; for the reasons set forth in the Court's Memorandum of this date;

**IT IS ORDERED:** The motion to stay this Court's order of June 26, 1998 brought pursuant to Federal Rule of Civil Procedure 62(c) by Defendants Department of Public Welfare of the Commonwealth of Pennsylvania and Feather O. Houstoun in her official capacity as Secretary of Public Welfare is DENIED.