# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

Nos. 00-1773/2686

_____

Missouri Republican Party, A Political     *
Party Committee; Pierce for Auditor,       *
A Candidate Committee; Charles A.          *
Pierce; Marc Ellinger; Citizens for        *
Eric Zahnd, A Candidate Committee;         *
Eric Zahnd; Lee R. Keith; Citizens         *
to Elect Mike Reid, A Candidate            *
Committee; Michael J. Reid; and            *
Elaine Tschee Reid,                        *
                                           *
    Appellees/Cross-Appellants,      *
                                           *
      v.                            *   Appeals from the United States
                                           *   District Court for the Eastern
Charles G. Lamb, In His Official           *   District of Missouri.
Capacity as Executive Director of          *
the Missouri Ethics Commission;            *
Robert Gardner, In His Official            *
Capacity as Chair of the Missouri          *
Ethics Commission; Patricia Flood,         *
In Her Official Capacity as Vice-Chair     *
of the Missouri Ethics Commission;         *
Richard Adams, Elaine Spielbusch,          *
Donald Gann, and Mike Greenwell, In        *
Their Official Capacity as Members         *
of the Missouri Ethics Commission;         *
and Jeremiah W. (Jay) Nixon, In His        *
Official Capacity as Missouri Attorney     *
General,                                   *
                                           *
    Appellants/Cross-Appellees.      *

_____

Submitted: August 9, 2000

Filed: September 11, 2000
_____

Before BOWMAN, JOHN R. GIBSON, and MORRIS SHEPPARD ARNOLD,
    Circuit Judges.
_____

MORRIS SHEPPARD ARNOLD, Circuit Judge.

This is a suit to enjoin the enforcement of Mo. Rev. Stat. § 130.032.4 and § 130.032.7, which limit the amount of cash and in-kind contributions that political parties may give to a candidate for public office, and provide penalties for violating the limitations that the statutes set. The plaintiffs (a political party, candidate committees, and candidates for public office) asserted that the statutes at issue violated their rights of free speech under the first amendment. The district court refused to issue an injunction and this appeal ensued. We reverse and remand with directions to the district court to enter an injunction that is not inconsistent with this opinion.


I.

The complaint in this case set out a series of cash contributions that the Missouri Republican Party made to the other plaintiffs in this case, described the actions that the defendants (the members of the Missouri Ethics Commission and the Missouri attorney general) intended to take against the plaintiffs because the contributions exceeded those that Missouri law allows, and asked for an injunction against the enforcement of the statutes under which the defendants intended to proceed.

The plaintiffs argued to the district court that the monetary expenditures at issue here were not really contributions, as that term is regularly used in cases of this kind, but rather were coordinated expenditures made in conjunction and cooperation with the candidates and their committees. The district court rejected that construction of the facts, and held that there was no genuine factual dispute about the nature of the monetary expenditures involved, because the candidates retained control over how the money was to be spent. We agree with the district court.

We recognize that there will be cases in which the line between a contribution and a coordinated expenditure will be hard to draw, and we concede that that line may frequently be particularly difficult to discern when the case involves money that passes from a party to one of its candidates. That is partly because, for reasons that will presently appear, we believe that it is often difficult to distinguish a party from its candidates at all. But here, as the district court noted, the candidates admitted that, although they discussed the use of the money with the party before it passed to them, they were nevertheless free to spend it as they saw fit. It is this freedom on the part of the candidates that provides them with the kind of independence that requires us to characterize the money that passed to them as contributions as a matter of law.

This characterization, as the parties recognize, is important to the case because, although the Supreme Court has not decided the precise issue before us, it has decided that contributions by individuals are subject to limitation, despite the first amendment interests at stake, *see Buckley v. Valeo*, 424 U.S. 1, 20-23 (1976) (*per curiam*), while independent expenditures by political parties are not, *see Colorado Republican Federal Campaign Committee v. Federal Election Commission*, 518 U.S. 604, 608 (1996). Although these cases do not directly rule this one, since it falls somewhere between them, we nevertheless think that they provide guidance on the proper resolution of the questions raised. We believe that the recent case of *Nixon v. Shrink Missouri Government PAC*, 120 S. Ct. 897 (2000), however, on which the defendants heavily rely, is of limited value in this respect, because, as we explain

later, the fact that one of the plaintiffs in this case is a political party serves to distinguish it from *Shrink Missouri Government PAC* in a crucial way.

## II.

The most important case for present purposes is *Buckley*, 424 U.S. at 20-21, which held that a limitation on individuals' contributions to candidates for public office was constitutional because such a limitation imposed "only a marginal restriction upon the contributor's ability to engage in free communication." That was because, as the Supreme Court saw it, a "contribution serves as a general expression of support for the candidate and his views, but does not communicate the underlying basis for the support," *id.* at 21. A limitation on contributions, the Court therefore concluded, "involves little direct restraint on ... political communication, for it permits the symbolic expression ... evidenced by a contribution," *id.*

We think that these considerations simply do not carry the same force when the contributor is a political party. The main object of a political party is to elect its candidates to office, and, in large measure, the speech of its candidates is its own speech. While political parties employ various methods to speak, a principal way in which they express themselves is through the speech of their candidates. In fact, parties and their candidates are often virtual alter egos.

We are not suggesting that there is always an exact one-to-one correspondence between candidates and their parties. Candidates and parties have their observable differences, and there is truth in the old adage that a platform is something to stand on, not to run on: Candidates are not mere agents or mouthpieces. But parties seek to field a team and support it. Candidates are frequently, moreover, and with excellent reason, called their party's standard-bearers, and they make frequent appeal to party principle; and in their interactions, candidates and parties influence each other and become more alike, so as to present a coordinated and common front. They are often, in other words, virtually indistinguishable from each other, and their

identities are merged in a way that makes dealings between them more than merely transient symbiotic ones between separate and distinct entities.

Because of their unity of purpose, and the virtual identity of parties and their candidates, it is not easy to say, in the words of *Buckley*, 424 U.S. at 21, that a political party's contribution "does not communicate the underlying basis for the support." To the contrary, a party's contribution provides an ideological endorsement and carries a philosophical imprimatur that an individual's contribution does not, and thus it cannot properly be called a "contribution" in the same sense that the individual contributions at stake in *Buckley* were. Nor is a party's contribution to its candidate, again in the words of *Buckley*, *id.*, merely a "symbolic expression" of support; it is more like a substantive political statement than others' contributions are. As we see it, all of this indicates that the first amendment rights at stake here are different from, and weightier than, those that were involved in *Buckley*. *Cf. Federal Election Commission v. Colorado Republican Federal Campaign Committee*, 213 F.3d 1221, 1227-28 (10th Cir. 2000).

### III.

The nature and character of political parties are relevant to another important aspect of our consideration of this case, namely, the kind of reason that the government must advance in order to justify an intrusion on first amendment rights. In *Shrink Missouri Government PAC*, 120 S. Ct. at 905-06, the Supreme Court held that preventing the corruption of candidates served as a sufficiently compelling reason to limit the size of contributions from individuals and political action committees. But, as Mr. Justice Thomas has observed, it is not easy to see how a party could "corrupt" one of its own candidates, since, on account of their general unity of purpose, they are committed, in the main, to the same aims and principles. *See Colorado Republican Federal Campaign Committee*, 518 U.S. at 646 (opinion of Thomas, J.). As we see it, the threat that a political party will corrupt a candidate is not a very realistic one.

-5-

The defendants suggest alternatively that preventing the circumvention of the limits on individual contributions can serve to justify regulating the size of party contributions. *See Buckley*, 424 U.S. at 38; *see also id.* at 35-36. *Buckley*, however, upheld a limitation on the total amount that any one person could contribute on the ground that it would keep individuals from circumventing the limits on giving to any one candidate. *See id.* at 38. But here the challenged restriction is on the party's giving, and the defendants seek to justify it on the ground that it would keep individuals from doing an end run around limits on their own giving. This scheme burdens the free speech rights of political parties in order to control the activities of someone else. This is something quite different from what *Buckley* approved.

Besides, the defendants admitted in their brief in this case that it would be illegal under Missouri law for an individual and a political party secretly to agree that the party would pass along the individual's contribution to a candidate after that individual had already contributed the statutory maximum. Such a contribution, the defendants say, would be treated under Missouri law as a contribution by the individual, not the party. The defendants therefore already have a mechanism in place that deals with attempts by individuals to circumvent limits on their contributions by using a political party as a mere conduit. *Cf.* 2 U.S.C. § 441a(a)(8). Limitations on party spending might have an indirect attenuating effect on secret "earmarking" agreements between individuals and political parties because such agreements may be hard to detect and police directly, but we think that that is too frail a rationale to justify burdening the substantial free speech rights of political parties that we have identified as being in jeopardy in this case. *Cf. Colorado Republican Federal Campaign Committee*, 213 F.3d at 1231-32.

The Supreme Court recently observed that, in deciding cases of this kind, it is important to keep in mind that the "quantum of empirical evidence needed to satisfy heightened judicial scrutiny of legislative judgments will vary up or down with the novelty and plausibility of the justification raised," *Shrink Missouri Government*

*PAC*, 120 S. Ct. at 906.  In this case, the record is wholly devoid of any evidence that limiting parties' campaign contributions will either reduce corruption or measurably decrease the number of occasions on which limitations on individuals' campaign contributions are circumvented.  Since, for the reasons indicated, we think that the justifications advanced for the statutory limitations relevant here are, in the context, novel and not particularly plausible, we hold that the challenged Missouri limitations on cash contributions are unconstitutional.

## IV.

The district court refused to allow the plaintiffs to file an amended complaint because it believed that the proposed amendment raised issues with respect to in-kind contributions that the original complaint did not raise.  It is true that the amended complaint adverted to the likelihood that most, if not all, in-kind contributions would actually be coordinated expenditures rather than contributions in the purest sense; and it is also true, as the district court noted, that the original complaint emphasized the impending enforcement efforts by the defendants with respect only to cash contributions.  But the original complaint did challenge Missouri's statutory limits on in-kind contributions from parties, and the summary judgment materials contained evidence relating to those kinds of contributions.  We therefore think that the case papers fairly raise the matter of in-kind contributions.  Given our view of the case, namely, that the limitations on cash contributions are unconstitutional on their face, and given the fact that the defendants have advanced no basis on which, for constitutional purposes, the two kinds of contributions can be distinguished in the present factual context, we hold that Missouri's limits on in-kind contributions also offend the first amendment.

## V.

We therefore reverse the judgment of the district court and remand the case for the entry of an injunction that is not inconsistent with this opinion.

JOHN R. GIBSON, Circuit Judge, concurring and dissenting.

I concur in the court's opinion to the extent that it holds that the payments by the party to the candidates were contributions and not expenditures. The candidates' freedom to spend the money as they saw fit requires that the money passed to them be characterized as contributions as a matter of law.

I agree that the Supreme Court's decisions in Buckley v. Valeo, 424 U.S. 1 (1976) (per curiam), and Colorado Republican Federal Campaign Committee v. Federal Election Commission, 518 U.S. 604 (1996), provide guidance. I differ, however, with the court's conclusion that political party contributions are distinguishable from the situation presented in Buckley and with the court's assertion that the recent decision in Nixon v. Shrink Missouri Government PAC, 120 S. Ct. 897 (2000), is of limited value here.

Buckley developed the groundwork for analyzing the constitutionality of campaign finance laws, distinguishing between contributions and expenditures and concluding that contribution limits impose less severe restrictions on First Amendment rights than expenditure limits. See 424 U.S. at 19-23. In Shrink Missouri, the Court recognized this distinction in upholding Missouri's limits on contributions made by any person. See 120 S. Ct. at 903-04. Significantly, five justices joined Justice Souter's opinion for the Court. True, Shrink Missouri does not speak directly to issues involving political party contributions. It does, however, demonstrate the continuing vitality of Buckley, and it sets out the standard we must apply here.

The court today asserts that, because of the special nature of political parties, limits on their contributions are more burdensome than limits on contributions by individuals. The court supports its determination that the First Amendment rights of political parties "are different from, and weightier than, those that were involved in

Buckley" with the novel conclusion that political parties and their candidates share a "virtual identity." While the court asserts that parties and candidates have "observable differences" and that there is not always an exact correspondence between them, it goes on to describe the party/candidate relationship in a variety of ways: a party and its candidate are "virtually indistinguishable from each other" and are "virtual alter egos" whose "identities are merged in a way that makes dealings between them more than merely transient symbiotic ones between separate and distinct entities." The court tergiversates as it reaches for a description of this relationship. Upon this shifting foundation, the court constructs its entire opinion.

There is no apparent consensus on the Supreme Court about the relationship between political parties and candidates. The Colorado Republican plurality (Justices Breyer, O'Connor, and Souter) rejected the argument that "a party and its candidate are identical, i.e., the party, in a sense, 'is' its candidates," pointing out that Congress treats parties and candidates differently by regulating contributions from one to the other. 518 U.S. at 622-23. Concurring and dissenting, Justice Kennedy, joined by Chief Justice Rehnquist and Justice Scalia, observed that there is "a constitutional tradition of political parties and their candidates engaging in joint First Amendment activity," along with "a practical identity of interests" between the two during an election. Id. at 630. Justice Thomas, also concurring and dissenting and also joined by Chief Justice Rehnquist and Justice Scalia, argued that a political party could not corrupt its candidate because the party's "very aim . . . is to influence its candidate's stance on issues and, if the candidate takes office or is reelected, his votes." Id. at 646. Justice Stevens, joined by Justice Ginsburg, stated in dissent:

> A party shares a unique relationship with the candidate it sponsors because their political fates are inextricably linked. That interdependency creates a special danger that the party--or the persons who control the party--will abuse the influence it has over the candidate by virtue of its power to spend.

Id. at 648. The various expressions articulated by the court today come closest to Justice Kennedy's observations, but his conclusion that a party and its candidates engage in joint activity and share interests falls short of the court's conclusion that they are virtually identical, virtual alter egos, or in some way merged.

Regardless of the nature of the relationship, party contributions to candidates can be regulated. Although Buckley upheld limits on contributions by individuals and political committees, not political parties, its analysis was framed in a way that leads to the conclusion that it applies to all contributions, no matter what their source. Buckley addressed the constitutionality of various restrictions on political contributions and expenditures contained in the Federal Election Campaign Act, an "intricate statutory scheme adopted by Congress . . . that appl[ies] broadly to all phases of and all participants in the election process." 424 U.S. at 12-13 (emphasis added). The Court discussed contribution and expenditure limits in a section of its opinion entitled "General Principles," id. at 14, preceding any discussion of the specific provisions at issue in the case. This placement indicates that the Court intended to set forth universally applicable precepts. Also telling is the fact that the Court discussed expenditure limits on political parties immediately before contrasting expenditure limits with contribution limits:

> The expenditure limitations contained in the Act represent substantial rather than merely theoretical restraints on the quantity and diversity of political speech. The $1,000 ceiling on spending "relative to a clearly identified candidate," 18 U.S.C. § 608(e)(1) (1970 ed., Supp. IV), would appear to exclude all citizens and groups except candidates, political parties, and the institutional press from any significant use of the most effective modes of communication. Although the Act's limitations on expenditures by campaign organizations and political parties provide substantially greater room for discussion and debate, they would have required restrictions in the scope of a number of past congressional and Presidential campaigns and would operate to

> constrain campaigning by candidates who raise sums in excess of the spending ceiling.
>
> By contrast with a limitation upon expenditures for political expression, a limitation upon the amount that any one person or group may contribute to a candidate or political committee entails only a marginal restriction upon the contributor's ability to engage in free communication.

Id. at 19-21 (footnotes omitted). The order of the Court's argument suggests that its discussion of contribution limits is fully applicable to limits on political parties.

Colorado Republican provides further support for the conclusion that Buckley's analysis applies here. The plurality held that the First Amendment prohibited applying the Federal Election Campaign Act's limit on political party expenditures to "an expenditure that the political party has made independently, without coordination with any candidate." Colorado Republican, 518 U.S. at 608. The opinion stressed the constitutional difference between contributions and expenditures that originated in Buckley. See id. at 614-15. The plurality's emphasis on the "constitutionally significant fact" that the party acted independently, id. at 617, demonstrates an assumption that limits on coordinated expenditures by political parties, which are treated as contributions under the Act, would be more likely to withstand constitutional scrutiny. Cf. California Democratic Party v. Jones, 120 S. Ct. 2402, 2415 (2000) (Kennedy, J., concurring) (five members of the Supreme Court "subscribe to the position that Congress or a State may limit the amount a political party spends in direct collaboration with its preferred candidate for elected office.").

It is thus evident that the constitutional distinction between contributions and expenditures applies to political party money. The free speech rights of parties are not greater than the free speech rights of individuals and political committees. Speech, after all, is speech, whether expressed by one or by a group formed to convey a

common viewpoint. Limits on party contributions are subject to the same level of scrutiny as limits on individual and political committee contributions.

The contribution limits at issue should be upheld if they are closely drawn to meet a sufficiently important interest. See Shrink Mo., 120 S. Ct. at 904. The court relies on what it perceives to be the lack of a sufficiently important interest to hold that the limits are unconstitutional. The court doubts that a political party can corrupt its own candidate, but Missouri does not justify its limits on that ground. Instead, it explains that the limits deter evasion of individual contribution limits.[1]

A plurality of the Supreme Court upheld limits on contributions to multicandidate political committees because the limits furthered the interest of preventing actual or apparent corruption by limiting "circumvention of the very limitations on contributions that this Court upheld in Buckley." California Medical Ass'n v. Federal Election Comm'n, 453 U.S. 182, 197-98 (1981). Writing separately, Justice Blackmun also concluded "that contributions to multicandidate political committees may be limited . . . as a means of preventing evasion of the limitations on contributions to a candidate or his authorized campaign committee upheld in Buckley." Id. at 203. See also Buckley, 424 U.S. at 38 (upholding a $25,000 overall limit on total contributions made by an individual because it acted to prevent evasion of the $1000 limit on contributions to a particular candidate that the Court held constitutional).

_____

[1] Missouri also briefly argues that the party limits address the public's perception of corruption that occurs when large contributions are made to political parties, political parties make large contributions to candidates, and the candidates' decisions mirror the large contributors' positions. This is a variation on the evasion argument. That is, an appearance of corruption may arise if individuals can evade contribution limits by using a political party as a conduit.

Missouri's justification for the party contribution limits is neither novel nor implausible: in both Buckley and California Medical, the Supreme Court accepted preventing evasion of a constitutional limit as a sufficiently important governmental interest. The court's insistence on evidence to support this justification runs counter to these decisions and to the Shrink Missouri decision, which held that Missouri's individual limits are justified by its important interest in preventing corruption and the appearance of corruption. See 120 S. Ct. at 905-08. If there is sufficient evidence to support individual contribution limits enacted to prevent corruption or the appearance of corruption, it logically follows that there is sufficient evidence to support a contribution limit enacted to prevent evasion of the individual limits.

The court relies on its conclusion that political parties have different and more important free speech rights than individuals to discount Missouri's interest in deterring evasion of its individual contribution limits. Because contributions made by a political party are no different than contributions made by individuals or other groups, this reliance is unfounded.

The remaining issue is whether the limits are closely drawn to meet the government's interest. Under Shrink Missouri, a contribution limit will stand unless it is "so radical in effect as to render political association ineffective, drive the sound of a candidate's voice below the level of notice, and render contributions pointless." Id. at 909. There is no evidence in the record to support a conclusion that Missouri's limits on political party contributions have created such "a system of suppressed political advocacy." Id. Because Missouri's limits on cash contributions that a party may make to a candidate are closely drawn to meet a sufficiently important governmental interest, they do not violate the First Amendment.

-13-

I would affirm the district court's judgment.[2]

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

---

[2]The court holds that the limits on in-kind contributions offend the First Amendment, an issue not passed upon by the district court. Under my analysis, the in-kind limits are constitutionally valid.