# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

Nos. 00-1773/2686

_____

Missouri Republican Party, A Political &ast;
Party Committee; Pierce for Auditor, &ast;
A Candidate Committee; Charles A. &ast;
Pierce; Marc Ellinger; Citizens for &ast;
Eric Zahnd, A Candidate Committee; &ast;
Eric Zahnd; Lee R. Keith; Citizens &ast;
to Elect Mike Reid, A Candidate &ast;
Committee; Michael J. Reid; and &ast;
Elaine Tschee Reid, &ast;
&ast;
  Appellees/Cross-Appellants, &ast;
&ast;
   v. &ast; Appeals from the United States
&ast; District Court for the Eastern
Charles G. Lamb, In His Official &ast; District of Missouri.
Capacity as Executive Director of &ast;
the Missouri Ethics Commission; &ast;
Robert Gardner, In His Official &ast;
Capacity as Chair of the Missouri &ast;
Ethics Commission; Patricia Flood, &ast;
In Her Official Capacity as Vice-Chair &ast;
of the Missouri Ethics Commission; &ast;
Richard Adams, Elaine Spielbusch, &ast;
Donald Gann, and Mike Greenwell, In &ast;
Their Official Capacity as Members &ast;
of the Missouri Ethics Commission; &ast;
and Jeremiah W. (Jay) Nixon, In His &ast;
Official Capacity as Missouri Attorney &ast;
General, &ast;
&ast;
  Appellants/Cross-Appellees. &ast;

_____

Submitted:  September 10, 2001

Filed:  November 2, 2001
_____

Before BOWMAN, JOHN R. GIBSON, and MORRIS SHEPPARD ARNOLD,
    Circuit Judges.
_____

MORRIS SHEPPARD ARNOLD, Circuit Judge.

This is a suit to enjoin the enforcement of Mo. Rev. Stat. § 130.032.4 and § 130.032.7, which limit the amount of cash and in-kind contributions that political parties may make to a candidate for public office, and provide penalties for violating the limitations that those statutes set.  The plaintiffs (a political party, candidate committees, and candidates for public office) asserted that these statutes violated their rights of free speech under the First Amendment.  When the district court refused to grant the plaintiffs relief, we reversed and remanded with instructions to the district court to enter an injunction.  *See Missouri Republican Party v. Lamb*, 227 F.3d 1070 (8th Cir. 2000), *cert. granted and opinion vacated sub nom. Nixon v. Missouri Republican Party*, 121 S. Ct. 2584 (2001) (mem.).  The state of Missouri then sought a writ of certiorari from the United States Supreme Court; the Supreme Court granted the writ, vacated our judgment, and directed us to reconsider the case in light of *Federal Election Comm'n v. Colorado Republican Fed. Campaign Comm.*, 121 S. Ct. 2351 (2001) (*Colorado II*).  *See Nixon*, 121 S. Ct. at 2584.  Upon further consideration, we affirm the judgment of the district court.

I.

In *Colorado II*, the Court held that political parties' first amendment claims are entitled to no higher level of scrutiny than claims advanced by individuals or Political

Action Committees, and that a state may constitutionally limit the amount of money that a party spends in coordination with its own candidate. 121 S. Ct. at 2366. In upholding the limitations on party contributions found in 2 U.S.C.A. § 441a(d)(3), the Supreme Court held that there was sufficient evidence in the record before it to support a legislative judgment that unregulated party contributions served to circumvent the contribution limits imposed on individuals set out in 2 U.S.C. § 441a(a). "What a realist would expect to occur has occurred," the Court said. "Donors give to the party with the tacit understanding that the favored candidate will benefit." *Id.* at 2367. The Court observed that candidates raise money for parties with the understanding that the candidates will receive party support in proportion to the amount that they raise and that candidates use the promise of future party support as an inducement when soliciting money. *Id.* at 2367-68. The Court further held that 2 U.S.C. § 441a(a)(8), which provides that contributions that "are in any way earmarked or otherwise directed through an intermediary or conduit to [a] candidate" are treated as contributions to the candidate, was not so effective a means of preventing circumvention that the First Amendment prevented resort to other means of prevention. The Court believed that holding otherwise would ignore "the practical difficulty of identifying and directly combating circumvention under actual political conditions." *Id.* at 2370. "The earmarking provision," the Court concluded, "would reach only the most clumsy attempts to pass contributions through to candidates," and thus further regulation was constitutionally justifiable. *Id.*

This aspect of the Supreme Court's ruling in *Colorado II* effectively undermines our previous conclusion that Missouri's limitations on parties' contributions to its candidates were unnecessary and thus unconstitutional because Missouri already had a law in place that prohibited earmarking agreements. *See Lamb*, 227 F.3d at 1073. The Missouri Republican Party argues vigorously, however, that there is no evidence in the present record that parties' contributions are in fact being used to circumvent Missouri's limitations on contributions by individuals, and that the state has therefore failed to carry its burden to justify the relevant regulation.

We believe, however, that it is not necessary for the state to show that circumvention is actually occurring in Missouri, for the factual record developed in *Colorado II* suffices to justify Missouri's conclusion that means other than its earmarking prohibition are necessary to prevent circumvention.

In a closely analogous situation, the Court ruled that "[t]he First Amendment does not require [a legislative body], before enacting ... an ordinance, to conduct new studies or produce evidence independent of that already generated by other [legislative bodies], so long as whatever evidence the [legislative body] relies upon is reasonably believed to be relevant to the problem that the [legislative body] addresses." *City of Renton v. Playtime Theatres, Inc.*, 475 U.S. 41, 51-52 (1986). While the state of Missouri of course did not rely on the evidence produced in *Colorado II* to justify its statute, it makes little constitutional sense to invalidate the statute when it would have been perfectly constitutional if it could have been shown that the Missouri legislature (in some collective sense?) had passed the statute with the proper frame of mind. In other words, we think that a statute is constitutional if there is objective evidence of facts sufficient to render that statute valid, even if those facts were not operating subjectively in the minds of the legislators to motivate them when they enacted that statute. Any other rule would prove unworkable because, among other things, the minds of legislators are largely unknowable, individual legislators have various motives for voting the same way on the same bill, and legislative history is nonexistent in many states.

In short, we think that the holding in *Colorado II* establishes as a matter of law the constitutionality of the Missouri statutes relevant here. We note, too, that the evidence that the Court relied on in *Colorado II* to uphold the federal statute was not in existence when FECA was passed: That evidence was produced by the Federal Election Commission and was based on its experience under FECA. This serves to bolster our confidence in the view already expressed that no predicate record-making

by the state of Missouri is necessary before the validity of its statute can be established.

Nor can we say that the limits that Missouri has set on political contributions by parties, though they are much lower than those upheld in *Colorado II*, are so low that they violate the First Amendment. The Supreme Court, in *Nixon v. Shrink Mo. Gov't PAC*, 528 U.S. 377, 397 (2000), quite emphatically held that the relevant question in the context is whether contribution limits are "so radical in effect as to render political association ineffective, drive the sound of a candidate's voice below the level of notice, and render contributions pointless." Nothing in this record would indicate to us that these circumstances obtain in the state of Missouri at the present time.

We close our consideration of this aspect of the case with the observation that the Missouri Republican Party, in common with other political parties in Missouri, continue to have substantial avenues for expressing their support of their candidates and for maintaining a political and ideological solidarity with them. As the Court observed in *Buckley v. Valeo*, 424 U.S. 1, 21 (1976) (per curiam), "[a] limitation on the amount of money a person may give to a candidate ... does not in any way infringe the contributor's freedom to discuss candidates and issues." The mode of discussion that the party chooses, moreover, may include advertising campaigns designated to promote issues and candidates, so long as those campaigns are not coordinated with those candidates. "The independent expression of a political party's views is 'core' First Amendment activity no less than is the independent expression of individuals, candidates, or other political committees," *Colorado Republican Fed. Campaign Comm. v. Federal Election Comm'n*, 518 U.S. 604, 616 (1996) (opinion of Breyer, J.), and it is therefore not subject to limitation. The Missouri Republican Party may "spend money in support of a candidate without legal limit so long as it spends independently." *Colorado II*, 121 S. Ct. at 2366.

II.

The Missouri Republican Party asserts that a remand is necessary because the district court did not address its claim that its due process rights were violated when the Missouri Election Commission (MEC) misled the Party into believing that there were no enforceable limits on party contributions. The Party asserts that the MEC told it that its contribution limits were ten times the limits on individual contributions, and, the Party claims, this statement led the Party to believe that there were no limits on its contributions because at the time that the MEC made the statement the limits on individual contributions had been enjoined. That, the argument runs, the MEC was saying that there were no limits on Party contributions because 10 times infinity is infinity.

It is true, as the Party says, that the district court did not address this claim, but we think that that was for a good reason: The Party never made this claim below. Its claim, instead, was that the MEC violated due process when it calculated the limits on parties' contributions by multiplying the limits on individuals by ten because, in *Shrink Mo. Gov't PAC v. Adams*, 151 F.3d 763 (8th Cir. 1998), we had enjoined the enforcement of the statutes that set the limit on individuals. We see no merit in this argument. We had not enjoined the enforcement of Mo. Rev. Stat. § 130.032.4, the statute at issue here, and that statute set limits on parties at a figure that was numerically ten times that of the limits on individuals. The fact that we had declared these latter limits unconstitutional had no bearing on the efficacy of the limits on parties and no effect on the MEC's right and duty to enforce those limits. In other words, the MEC, pursuant to one statute, set numbers that were ten times the numbers that appeared in another statute; the fact that the enforcement of the latter statute had been enjoined as unconstitutional cannot furnish the basis for a constitutional claim, even if the limit chosen was not in conformity with state law.

The Party argues, finally, that the district court erred in not addressing its contention that the spending limits were being enforced against it in a discriminatory

fashion: The Party maintains that the MEC has ignored violations of contribution limits by the Missouri Democratic Party and seven of that party's candidates. But the Party never advanced this contention, either as a claim or as a defense, in the court below. The court was therefore not obligated to deal with it. We express no view on the ultimate merits of any action that the Party might bring in the future for discrimination against them in the enforcement of the relevant statutes.

## III.

For the reasons indicated, the judgment of the district court is affirmed.

JOHN R. GIBSON, Circuit Judge, concurring in part and dissenting in part.

I concur with the court's decision today, with its application of Federal Election Commission v. Colorado Republican Federal Campaign Committee, 121 S.Ct. 2351 (2001) (Colorado II), and with its opinion except for the last sentence of Part II. But in my view the court does not go quite far enough. Two aspects of the court's decision demonstrate a hesitation to give effect to Missouri's constitutionally valid campaign finance statutes that I think is no longer appropriate.

The court should vacate today its injunctive order of July 31, 2000, preventing Missouri from enforcing Mo. Rev. Stat. §§ 130.032.4 and 130.032.7 (2000), its statutes regulating party contributions to candidates in state elections. The State has requested that our injunctive order be vacated now. Yet the court today allows the order to remain in force despite the destruction of its legal underpinning.[1]

---

[1] This may in some sense be a technical matter. Lifting our injunction would not have effect until a mandate issues to the district court below. But doing so would signal more strongly than our present opinion does that there is nothing before us to suggest that Missouri's party contribution limits are other than fully enforceable.

Our July 31 order, issued over my dissent, was a one-sentence, summary grant of injunction barring enforcement of the party contribution limits pending this appeal. This order made no effort to comply with the standards required by the Supreme Court in Hilton v. Braunskill, 481 U.S. 770, 776-77 (1987), and applied in our decision in Shrink Missouri Government PAC v. Adams, 151 F.3d 763, 764 (8th Cir. 1998), and numerous other cases, for determining when an injunction pending appeal may issue.

The Supreme Court's Colorado II decision and its order of June 29, 2001 (which vacated our judgment and opinion of September 11, 2000, instructing the district court to enter a permanent injunctive order), returned the case to us for reconsideration. Colorado II drastically altered the legal landscape that confronted the court when the original injunction pending appeal was issued. The court today issues an opinion that decides the merits of the case against the Missouri Republican Party. The injunction should therefore be dissolved. The burden should be on the Party to demonstrate, inter alia, a likelihood of success on the merits (the "most important" factor in deciding whether an injunction should issue, Adams, 151 F.3d at 764), should it seek to continue the injunction.

Finally, the last sentence in Part II of the court's opinion first speculates on what action may be taken in the future in this litigation, and then disclaims any decision on it. This is dictum, and I do not join in it.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

-8-