Lulseged DHINE, Petitioner,

v.

DISTRICT DIRECTOR and Immigration
and Naturalization Service,
Respondents.

No. 92 Civ. 2026 (CSH).

United States District Court,
S.D. New York.

May 24, 1993.

## MEMORANDUM OPINION AND ORDER

HAIGHT, District Judge:

This case is before the Court on respondents' motion for a stay of judgment pending appeal.

## BACKGROUND

In a memorandum opinion and order dated April 23, 1993, 818 F.Supp. 671, familiarity with which is assumed, this Court granted Dhine's petition for a writ of habeas corpus. In a judgment dated May 5, 1993, this Court ordered Dhine's release from custody.

On May 7, 1993, the government filed a notice of appeal of the Court's decision. In the interim, the government asks this Court to stay the judgment of May 5, 1993, pending a decision from the Second Circuit on the appeal. Petitioner resists this request and asks that the Court order his release.

## DISCUSSION

A court making an initial custody determination in a habeas corpus case should be guided by the language of Fed.R.App.P. 23(c), and by the factors traditionally considered in decided whether to stay a judgment in a civil case. *See Hilton v. Braunskill,* 481 U.S. 770, 777, 107 S.Ct. 2113, 2119–20, 95 L.Ed.2d 724 (1987). Rule 23(c) provides:

Pending review of a decision ordering the release of a prisoner in such a proceeding, the prisoner shall be enlarged upon the prisoner's recognizance, with or without surety, unless the court or justice or judge rendering the decision, or the court of appeals or the Supreme Court, or a judge or justice of either court shall otherwise order.

Four factors are traditionally utilized in determining whether to stay a judgment in a civil case: (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits [1]; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties in interest in the proceeding; and (4) where the public interest lies. *Id.,* at 776, 107 S.Ct. at 2118–19. Furthermore, if the respondent establishes that the prisoner would constitute a danger to the community if released, the Court may consider that factor in resolving the stay question. *Id.,* at 777, 107 S.Ct. at 2118–19.

### 1. *Strong Possibility of Success on Appeal*

The Government devotes much of its argument to relitigating the issues that were determined in this Court's April 23rd opinion. To the extent that those issues were addressed in the earlier opinion, the Court need not revisit them. Instead, I focus on the Government's argument that it has a substantial possibility of success on appeal. The government contends that it knows of no case where a court reversed a BIA decision denying a discretionary grant of asylum where the applicant had a multiple criminal convictions.

Initially, I observe that the government does not take issue with the legal standards or analyses the Court employed, but merely with the result that was reached. Thus, the appeal appears to rest on the ground that the Court's findings constituted an abuse of discretion. As far as grounds for appeal go, this is one of the more difficult arguments to make successfully.

As for the government's argument concerning the novelty of my finding, I confess that I know of no case where the government seemed so anxious to repatriate someone to a country from which every single one of his "group" had fled, on the basis of four misde-

---

1. The government, citing *Hirschfeld v. Board of Elections,* 984 F.2d 35, 39 (2d Cir.1992), advocates use of a different standard: whether the movant has demonstrated a substantial possibili-

ty, although less than a likelihood, of success on appeal. The Court need not determine which standard is proper, as its result does not turn on which standard is employed.

meanor drug convictions spread out over nearly twelve years.

I agree that this case presents novel issues, but I cannot find, on the basis of the papers submitted by the government, that they have made a particularly strong showing of likelihood of success on appeal.

### 2. *Irreparable Harm and the Public Interest*

■ The government argues that because at least three of Dhine's convictions constitute aggravated felonies within the meaning of 8 U.S.C. § 1101(a)(43), by definition he poses a danger to the community and a risk to abscond.

The issue before the Court, however, is not whether Dhine is an aggravated felon within the meaning of the Immigration and Nationality Act, but whether his release poses a danger to the community, which presumably would be contrary to the public interest.

Dhine has never been accused of committing any crime of violence. He has, however, been convicted four times for offenses relating to drugs. Militating in his favor are the facts that his offenses involved relatively small amounts of drugs, and that he has been drug free for three years now, although that has been in a secure setting during that period.

The government has identified a legitimate concern that Dhine would return to drug use if he were released. There is no dispute that this result would work against the public interest. The magnitude of that risk, however, is reduced by Dhine's efforts at rehabilitation and the promises to assist Dhine upon his release made by various agencies and individuals.

The government also argues that Dhine is likely to abscond, given that he has two prior convictions for failure to appear. On his own behalf, Dhine argues that he has every incentive not to abscond since a court has awarded him the relief he seeks. While I recognize that there is some risk that Dhine will abscond, I think that risk is fairly small given the likelihood of success of his petition, and because a favorable result from the Second Circuit will afford him exactly what he seeks: the right to stay in this country.

Clearly the government does have legitimate concerns about whether Dhine will remain drug free and whether he can be relied upon to appear as directed. However, I do not think that full custody is necessary to address these concerns. I believe that strict supervision could provide sufficient assurance that Dhine would remain drug free and appear when directed, if he were released.

### 3. *Injury to the Petitioner*

■ The government argues that Dhine will not be prejudiced if the stay is granted because he has been in custody for more than three years now, and an additional brief period of incarceration would not cause substantial injury. I reject that argument outright. Dhine does face substantial injury for every day he is forced to remain in custody.

■ In evaluating the factors employed to determine whether a stay should be issued, I find that the factors militate in favor of release, although there is a strong argument to impose at least some supervision. That result would minimize the injury to the petitioner, while providing sufficiently protecting the public interest. Furthermore, I think that this result complies with the direction of Rule 23(c).

### ORDER

Accordingly, I enter the following order: Respondents are directed to release petitioner from custody. The petitioner will be subject to strict parole supervision; that supervision will be structured and administered by respondents. If petitioner finds that the terms of supervision are too onerous, he may apply for the Court for relief.

I further grant the government's request that this order be stayed for ten (10) days to allow the government to petition the Second Circuit for a stay of this Court's order.

It is SO ORDERED.