William H. **KELLEY**, Petitioner,

v.

Harry **SINGLETARY**, Respondent.

No. 92–14246–CIV.

United States District Court, S.D. Florida.

March 26, 2003.

---

Donald Lee Ferguson, Boca Raton, FL, James Charles Lohman, Tallahassee, FL, Barry P. Wilson, Boston, MA, for petitioner.

Carol M. Dittmar, Attorney General Office, Tampa, FL, for respondent.

## ORDER ON STAY PENDING APPEAL

ROETTGER, District Judge.

**THIS CAUSE** is before the Court upon Respondent's Motion for Stay Pending Appeal. Respondent, (the state of Florida or "State"), requests that this Court enter an Order staying the judgment in this case pending appeal in the Eleventh Circuit Court of Appeals. Petitioner ("Kelley") does not oppose the State's request for a stay pending appeal but moves this Court for Kelley's immediate release, pursuant to F.R.App. P. 23(c).[1]

On September 19, 2002, this Court granted Kelley's petition for writ of habeas corpus as to claim I ("September Order"). This Court held that respondent withheld materially exculpatory evidence. On December 30, 2002, this Court granted Kelley's petition for writ of habeas corpus as to claim II, holding that Kelley received ineffective assistance of counsel due to trial counsel's complete lack of a pretrial investigation strategy ("December Order").

On January 28, 2003, the State filed a Notice of Appeal as to the September and December Orders. The State argues that while this Court did not specify a deadline for the new trial as required in the September Order, Florida law requires that Kelley be brought to trial within 90 days of a trial court's receipt of an order granting the new trial. *See* Florida Rule of Criminal Procedure 3.191(m). If this Court does not issue a stay pending appeal, the State argues, the 90 day time limit is

---

1. The rule provides that "[w]hile a decision ordering the release of a prisoner is under review, the prisoner must-unless the court or judge rendering the decision... orders otherwise-be released on personal recognizance, with or without surety." *See* F.R.App. P. 23(c).

insufficient to permit appellate review of this Court's Orders.

■ The "general standards governing stays of civil judgments should also guide courts when they must decide whether to release a habeas petitioner during the State's appeal..." *Hilton v. Braunskill,* 481 U.S. 770, 776, 107 S.Ct. 2113, 95 L.Ed.2d 724 (1987). The standard for issuance of a stay is governed by four factors: (1) whether the stay applicant has made a strong showing that it (the State) is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies. *See id.* A court is to consider three additional "traditional stay" factors if the habeas petitioner were to be released: (1) the possibility of flight; (2) the risk of danger to the public; and (3) the state's interest in continuing custody and rehabilitation of the petitioner while the case is pending appeal. *See id.* at 777, 107 S.Ct. 2113.

■ Addressing first the likelihood of the stay applicant's success on the merits, the State briefly argues at least three issues which may warrant success on appeal, claiming (1) this Court conducted an evidentiary hearing, thereby "substituting" this Court's own judgment in place of the state courts' regarding the materiality of evidence; (2) this Court failed to provide due deference to the state court record regarding the issue of the State's withholding exculpatory evidence; (3) and this Court's finding of ineffective assistance of counsel was both improper and ignored the state court record. This Court's September Order detailed the manner in which the State failed to disclose materially exculpatory evidence and how this failure prejudiced Kelley. *See Kelley v. Single-*

*tary,* 222 F.Supp.2d 1357, 1362–67 (S.D.Fla.2002).

This Court's December Order detailed the manner in which Kelley received ineffective assistance of counsel and how trial counsels' complete lack of pretrial investigation prejudiced Kelley. *See Kelley v. Singletary,* 238 F.Supp.2d 1325, 1328–29 (S.D.Fla.2002). In light of these Orders, this Court concludes that the State has not established the requisite "strong showing that it is likely to succeed on the merits." *See Hilton,* 481 U.S. at 777, 107 S.Ct. 2113.

The second factor to consider is whether the State will be irreparably injured absent a stay. The State argues that if no stay is issued pending appeal, the State will be unable to comply with the Florida Rules of Criminal Procedure requirement that a new trial commence within 90 days. Kelley concurs that 90 days is an insufficient period of time for appellate review at the Eleventh Circuit, but requests that he be released pursuant to F.R.App. P. 23(c). Inasmuch as the State would not be able to comply with the procedural rule absent a stay, this factor is weighted in favor of the State.

Kelley's motion for release pursuant to F.R.App. P. 23(c) addresses the third factor of whether he would be substantially injured by the issuance of the stay. Kelley would be substantially injured by the issuance of a stay since this Court has already reversed his conviction and ordered a new trial. The State argues that if Kelley were released, he would pose a high risk of flight due to his prior violent felony convictions and his dearth of ties to Florida. Rule 23(c) "undoubtedly creates a presumption of release from custody" unless "traditional stay factors tip the balance against it." *Hilton,* 481 U.S. at 774, 777, 107 S.Ct. 2113. However, in this case, the traditional stay factors do not tip the

balance against the presumption of release.

First, Kelley's only previous violent conviction was in 1959. A simple reading of the sentencing phase of Kelley's trial from the transcript of the original record on appeal, illustrates that Kelley's sole prior violent felony was his conviction of robbery when he was seventeen years of age. Kelley robbed $114.00 and one six-pack of beer from an individual on June 6, 1959. *See* Original Record on Appeal, p. 956. While this Court does not view criminal conduct in a favorable light, an act occurring during Kelley's teenage years is insufficient to warrant Kelley a public threat. Further, the State did not file a reply brief challenging Kelley's characterization as a model inmate for his eighteen years of incarceration.

If Kelley were to be released from custody pending appeal, he could be released into the custody of his brother, Robert Kelley. Robert Kelley is a 64 year old retiree with a four bedroom home and guest cottage in Tewksbury, Massachusetts.[2] He would provide William with a bedroom and his own private bathroom.[3] Robert Kelley was employed for 37 years by the Wonder Bread–Hostess Company, and the Elks state Grand Lodge Organization previously ordained him as their Elk of the Year.[4]

While Robert Kelley's residence is outside this state, several factors mitigate the likelihood of flight from future proceedings in Florida. First, Kelley is willing to make an unequivocal waiver of extradition to the state of Florida.[5] Second, Kelley has two grandchildren living in Massachusetts whom he has never met. The fact that Kelley has never met his two grandchildren persuades this Court of the strong probability that Kelley would remain in the close proximity of his immediate family.

The final traditional stay factor to consider is the State's interest in continued custody and rehabilitation of Kelley pending appeal. It is unlikely that the State would ever retry Kelley if it loses its appeal. In fact, the state attorney for Florida's 10th Judicial Circuit stated that if the Eleventh Circuit affirms the granting of the petition for writ of habeas corpus, no new trial would occur.[6] Florida has "no way to retry Kelley. We have nothing." [7] Perhaps it is not surprising that the State would be unable to retry Kelley since the State's main witness, John Sweet, is deceased. Likewise, the public has little interest in Kelley's continued custody since he poses no danger to public safety and is not a flight risk.

The final *Hilton* factor requires inquiry as to where the public interest lies. Of paramount importance to the public interest is that both the State and Kelley are treated fairly. Such fairness was achieved in this Court's September and December Orders. Additionally, this Court is satisfied that Kelley is not a flight risk nor a threat to public safety. Therefore, the State has little to gain from the continued incarceration of a man this Court already determined is in custody in violation of the United States Constitution.

---

**2.** *See* Affidavit of Robert Kelley ¶¶ 2, 4.

**3.** *See id.* at ¶ 4.

**4.** *See id.* at ¶ 2 and Letter from Louis J. Connolly.

**5.** *See* Petitioner's Opposition to Respondent's Motion for Stay Pending Appeal and Memorandum of Law, p. 5.

**6.** *See* Meg Laughlin, *State Blocks Death Row Inmate's Release One Day Before Deadline,* Miami Herald, Jan. 29, 2003.

**7.** *See id.*

Upon consideration of the motion and for the reasons stated above, it is

**ORDERED AND ADJUDGED** that the State's Motion for Stay Pending Appeal is **GRANTED** to the extent that Florida Rule of Criminal Procedure 3.191(m) requires a retrial within 90 days. It is further

**ORDERED AND ADJUDGED** that William Kelley, is to be released from custody during the pendency of the appeal. Counsel for William Kelley is to provide this Court, within five days of the entry of this Order, with an unequivocal waiver of extradition as proof of Kelley's willingness to return to Florida custody if necessary. Upon Kelley's filing of this waiver of extradition, Kelley is to be released into the custody of his brother Robert, who is to ensure both his safe travel to Tewksbury, Massachusetts and provide for his lodging and well being.