The SANDUSKY COUNTY
DEMOCRATIC PARTY,
et al., Plaintiff

v.

J. Kenneth BLACKWELL, Defendant

No. 3:04 CV 7582.

United States District Court,
N.D. Ohio,
Western Division.

Oct. 18, 2004.

Fritz Byers, Michael P. O'Grady, Richard M. Kerger, Kerger & Kerger, Toledo, OH, Rory P. Callahan, Cloppert Latanick Sauter & Washburn, Columbus, OH, Joseph V. McNamara, Cooper & Walinski, Richard S. Walinski, Cooper & Walinski, Joseph J. Allotta, Allotta, Farley & Widman, Toledo, OH, for The Sandusky County Democratic Party, The Ohio Democratic Party, Farm Labor Organizing Committee, Inc., North Central Ohio Building and Construction Trades Council, Local 245 International Brotherhood of Electrical Workers, Plaintiffs.

Richard G. Lillie, Benesch Friedlander Coplan & Aronoff, Cleveland, OH, for J. Kenneth Blackwell, in his Official capacity as Secretary of State, Defendant.

James P. Silk, Jr., Spengler Nathanson, Theodore M. Rowen, Spengler Nathanson, Truman A. Greenwood, Spengler Nathanson, Toledo, OH, for Gregory L. Arnold, Glenn A. Wolfe, Thomas W. Noe, Intervenors.

## ORDER

CARR, District Judge.

Pending in this case are motions by the defendant J. Kenneth Blackwell, Ohio Secretary of State, and three individuals who have been granted leave to intervene in

support of Blackwell, to stay the mandate of an injunction issued in this case, as to which the defendant and intervenors have filed a notice of appeal. Plaintiff opposes the defendant's motion.

For the reasons that follow, the motions to stay shall be denied.

This case involves a suit by the Sandusky County [Ohio] Democratic Party, the Ohio Democratic Party, and three labor organizations against Blackwell in his official capacity as Ohio's chief elections officer. The plaintiffs contend, and I found, that a directive relating to provisional voting issued by Blackwell to Ohio's County Election Boards, Directive 2004–33, violated the Help America Vote Act, 42 U.S.C. §§ 15301, et seq.

On the basis of that finding, I overruled motions by Blackwell and the interveners to dismiss, and I granted plaintiff's motion for a preliminary injunction. The injunction states:

> The defendant J. Kenneth Blackwell, Secretary of State of the State of Ohio, and his employees, agents, representatives, and successors in office are hereby enjoined and restrained from applying the provisions of Ohio Secretary of State Directive 2004–33 that, as described herein, violate the Help America Voting Act of 2002, 42 U.S.C. §§ 15301, et seq.; and said defendant J. Kenneth Blackwell shall forthwith, in compliance with this Order, prepare, and, not later than 4 p.m., Monday, October 18, 2004, file with this Court a Directive that complies with the Help America Vote Act, and shall otherwise be consistent with this Order.

(Doc. 26 at 37).

As support for a stay pending appeal, the Secretary states, *in toto:*

> Defendant submits that the overall nature and complexity of the issues raised in this case warrant a stay and suspension to allow the Sixth Circuit Court of Appeals the ability to pass upon such issues before this Court's Order is implemented. Defendant further submits that a stay and suspension are appropriate since the questions raised in the instant case concern important aspects of State and Federal law, and the implementation of the Help America Vote Act ("HAVA") by Ohio's Chief Election Official. Finally, Defendant notes that a stay and suspension are appropriate since the ramifications of the Court's Order are likely to play a significant role in the November 2, 2004 State and National elections.

(Doc. 29).

The defendant does not contend that he cannot comply with the requirement that he submit a revised directive within the time required by the injunction. He does not contend that drafting such directive would be particularly complex or difficult, or could not otherwise be accomplished as demanded by the injunction. He does not contend that preparations for the forthcoming election would be unduly disturbed were he required to draft *now*, while time still permits, a HAVA-sufficient directive to Ohio's election officials, and submit the same to this Court for its review.

Instead, Blackwell simply points to "the overall nature and complexity of the issues raised in this case" as justification for a stay. Regardless of how complex, once properly understood, the two determinative questions (whether plaintiffs can maintain a cause of action under § 1983, and, if so, whether this court properly interpreted the term "jurisdiction" as used in HAVA) may or may not be, any such complexity has nothing to do with the question of whether a stay of the injunction should be granted.[1]

---

1. The intervenors "seek a stay of any portion of the Order which speaks to counting of provisional ballots." As the interveners' mo-

Rule 62(c) governs whether a stay should be granted (or an injunction issued or continued during an appeal): "When an appeal is taken from an interlocutory or final judgment granting, dissolving, or denying an injunction, the court in its discretion may suspend, modify, restore, or grant an injunction during the pendency of the appeal upon such terms as to bond or otherwise as it considers proper for the security of the rights of the adverse party."

■ Determination of whether to continue an injunction pending appeal involves consideration of the following factors: 1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; 2) whether the applicant will be irreparably injured absent a[n injunction]; 3) whether issuance of the [injunction] will substantially injure the other parties interested in the proceeding; and 4) where the public interest lies. *Hilton v. Braunskill*, 481 U.S. 770, 776, 107 S.Ct. 2113, 95 L.Ed.2d 724 (1987).

■ The defendant does not meet the high standard for granting a stay pending appeal.

I note, first, that he has not recited or discussed the factors that I (and the Court of Appeals) must consider in determining whether to grant his request for a stay.

Nonetheless, any showing that he might have made would have been insufficient.

Defendant has, for example, failed to cite any case that supports his contention that the process of administrative review (in which, in his discretion, his sole judgment is final, and which, in any event, involves no opportunity for judicial review), either alone, or in conjunction with the relief that may be sought by the Attorney General, constitutes a "comprehensive enforcement scheme." *See generally Middlesex County Sewerage Auth. v. National Sea Clammers Assn.*, 453 U.S. 1, 20, 101 S.Ct. 2615, 69 L.Ed.2d 435 (1981) (private enforcement is foreclosed only when the statute creates a remedial scheme that is "sufficiently comprehensive ... to demonstrate congressional intent to preclude the remedy of suits under § 1983.").

The burden of showing that Congress had included such a scheme in HAVA was on the defendant, *Gonzaga Univ. v. Doe*, 536 U.S. 273, 284, 122 S.Ct. 2268, 153 L.Ed.2d 309 (2002). He did not meet that burden.

Reversal of this case *in toto* would appear to depend, therefore, on whether I properly interpreted HAVA as unambiguously creating individual rights. *Id.* at 283, 122 S.Ct. 2268 (only "unambiguously

---

tion for a stay correctly notes, however, "the Order itself does not, apparently, extend to the counting of ballots." (Doc. 31, at 2).

To the extent that the interveners complain (as Blackwell does not) that distribution of a HAVA-compliant directive to Ohio's election officials or otherwise complying with HAVA would create problems in administering the election, they should address their complaint to Blackwell, whose failure to issue Directive 2004–33 in a more timely manner has unnecessarily created the exigencies of time, and any consequences those exigencies may create.

In any event, to the extent the intervenors seek a stay with regard to the counting of

ballots (an activity that is not directly implicated by the command of the injunction), their request is premature. There is little doubt that this Court's decision will be reviewed and a final judgment reached as to plaintiffs' challenge to Directive 2004–33 before ballots are cast, much less counted. There is no need at this point to stay something that was neither ordered (i.e., ballot counting) nor is otherwise affected by the present injunction.

Thus, even if the intervenors had standing to object to an injunction which does run to them or affect directly or indirectly *any* of their rights or interests, their motion for a stay has no merit.

conferred" rights will support a § 1983 action).

What right could be more fundamental in a democracy than the right to vote? What could be more dangerous to the continuation of a democracy than denial of that right when it should be allowed? What do the provisional voting provisions of HAVA do, if they do not extend and ensure the franchise in circumstances where, as history has shown, it might be lost? *See* Caltech/MIT Voting Technology Project, *Voting: What Is, What Could Be* 30 (2001) (estimating that in the 2000 federal election the loss of upwards of a 1.5 million votes ion votes could have been avoided by use of "provisional" ballots).

In its provisional voting provisions, HAVA does not tell *how* to count votes: it tells *when* to let them be cast and then be counted. To be sure, this has administrative consequences; but those consequences simply flow from HAVA's expansion and protection of the franchise.

Thus, with regard to the basic issue in this case: whether plaintiffs have a private right of action to enforce HAVA's right to vote provisionally in *federal* elections, I find that the defendant does not have a substantial likelihood of prevailing on the merits.

With regard to the other issue—whether provisional voting can occur in a precinct in a county in which a voter is registered, or whether provisional voting can only occur in a voter's "home" precinct—the question of likelihood of success is somewhat closer. Reasonable judges might reach different conclusions on this question, though I believe the most reasonable result, and the one that best implements HAVA's franchise-friendly and -favoring

terms and purpose, is reflected in my determination that voters can vote in any precinct in their county of registration.

The mere possibility of a different result on a close question is not, however, a substantial likelihood of success on the merits.

Nonetheless, the defendant may, if he chooses, comply with the mandate of the injunction by submitting alternative versions of a properly revised directive: one version can be based on the assumption that my decision on the question of county-wide provisional voting will be upheld, while the other can be based on the assumption that that aspect of my decision will be reversed. Submitting alternative proposals of this sort should facilitate, in any event, a more prompt response and distribution of the appropriate directive when and if such becomes necessary.[2]

By giving the defendant the opportunity, which I hope he accepts, to submit alternative versions, I am accommodating the possibility of reversal on the "jurisdiction" issue. In addition, and more importantly, I am seeking avoid any delay that can be avoided at this point.

This accommodation does not affect my conclusion that the defendant has failed to show a substantial likelihood of success on the merits.

The defendant's motion for stay has not suggested, as noted, that he or Ohio's election process would be irreparably harmed if he were compelled to draft a HAVA-complaint directive. Any such contention could hardly be well taken: as drafting a HAVA-sufficient directive should not be difficult. This is not a task that requires

2. During a preliminary discussion of the defendant's motion to stay, counsel for the defendant agreed with the Court's observation that the only dispute in this case regarding the meaning of any of the terms used in

HAVA's provisional voting provisions is the meaning of the term "jurisdiction." The parties' differing interpretations of the meaning of this term is the basis for their dispute about where provisional ballots may be counted.

elucidation of a variety of statutes of varying degrees of complexity, ambiguity, or inconsistency.[3]

With regard to provisional voting, HAVA is remarkably straightforward and succinct. Simply listing its requirements in a manner that would most enhance the comprehension of election officials, and making clear to them that any provisions of Ohio law or prior practices inconsistent with HAVA procedures, as therein described, might suffice. At least it would be a step in the right direction.

No one will suffer any injury, much less irreparable injury, if the defendant is required to comply with the mandate that he draft a HAVA-sufficient directive now, rather than later.

Making the defendant prepare a HAVA-sufficient directive at this point during the pendency of his appeal will not injure or adversely affect other parties, Although plaintiffs have asked that I direct distribution of a revised directive forthwith, I decline to do for now. I prefer to have a HAVA-compliant directive prepared. Whether to distribute such directive (or alternative directives that acknowledge *all* the different results that might be reached (affirmance; affirmance in part, reversal in part; reversal) on appeal) may become appropriate in due course; but that is a question for further consideration.

Thus, the interests of no one are adversely affected if I deny the request for a stay.

Finally, the public interest favors denial of the stay, and grant of an injunction during the appeal of my decision. The time between now and the November 2,

2004, election is short. If this Court's mandate to the defendant to promptly draft a HAVA-compliant directive to Ohio's election officials is stayed, even less time will be available for him to do so if my decision is upheld in whole or part. Indeed, there is a risk that the mere passage of time will impede, if not defeat HAVA's effective implementation unless a HAVA-sufficient directive is ready and set to be distributed at the earliest possible and appropriate time.

There is no reason to delay the process of formulating a directive that complies with HAVA, and much risk if delay occurs. The public interest clearly favors denial of the stay.

It is, therefore,

ORDERED THAT

1. The motions of the defendant and interveners to stay the injunction issued October 14, 2004, be, and the same hereby are denied; defendant shall comply with this Court's prior order when and as that Order directs.

So ordered.

---

3. Plaintiffs have submitted a proposed directive with their opposition. I trust that defendant will take that proposal into consideration when he submits his draft. It would be helpful, to the extent that defendant disagrees with the plaintiff's proposal (and I neither presently have nor express any views on *its* sufficiency), if the defendant could comment briefly on the basis for such disagreement.