# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT
_____

**No. 17-5267**                                    **September Term, 2017**

**1:17-cv-01597-CKK**

**Filed On: December 22, 2017**

Jane Doe 1, et al.,

        Appellees

    v.

Donald J. Trump, in his official capacity as
President of the United States, et al.,

        Appellants

      **BEFORE:**    Rogers, Tatel, and Millett, Circuit Judges

## O R D E R

Upon consideration of the emergency motion for an administrative stay and partial stay pending appeal, the response thereto, and the reply; Citizens United, et al.'s motion for leave to file an amicus brief in support of Appellants, the lodged amicus brief; and the amicus brief of retired military officers and former national security officials in support of Appellees; and the Rule 28(j) letters, it is

**ORDERED** that the motion for leave to file an amicus brief in support of Appellants be granted. The Clerk is directed to file the lodged amicus brief. It is

**FURTHER ORDERED** that the emergency motion for an administrative stay and partial stay pending appeal be denied, as Appellants have not satisfied the stringent requirements for a stay pending appeal. See Nken v. Holder, 556 U.S. 418, 434 (2009); D.C. Circuit Handbook of Practice and Internal Procedures 33 (2017).

At issue in this motion is the district court's decision to preliminarily enjoin Sections 1(b) and 2(a) of the August 25, 2017, Presidential Memorandum. When considering whether to grant a stay pending appeal, courts traditionally consider: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the

proceeding; and (4) where the public interest lies." Nken, 556 U.S. at 426 (quoting Hilton v. Braunskill, 481 U.S. 770, 776 (1987)). "We review a district court decision regarding a preliminary injunction for abuse of discretion, and any underlying legal conclusions de novo." Katz v. Georgetown University, 246 F.3d 685, 688 (D.C. Cir. 2001) (quoting CityFed Fin. Corp. v. Office of Thrift Supervision, 58 F.3d 738, 746 (D.C. Cir. 1995)).

First, Appellants have not shown a strong likelihood that they will succeed on the merits of their challenge to the district court's order. As the district court explained, "the sheer breadth of the exclusion ordered by the [Memorandum], the unusual" and abrupt "circumstances surrounding the President's announcement of [the exclusion], the fact that the reasons given for [it] do not appear to be supported by any facts, and the recent rejection of those reasons by the military itself," taken together, "strongly suggest that Plaintiffs' Fifth Amendment claim is meritorious." Memorandum Opinion Granting Preliminary Injunction, Doe 1 v. Trump, No. 17-1597, at 3 (Oct. 30, 2017) (Addendum (Add.) 14).

Appellants' argument that operation of the district court's injunction should be stayed is particularly flawed as to plaintiff Midshipman Regan Kibby and other transgender individuals who, like Midshipman Kibby, are enrolled in the United States Naval Academy, the United States Military Academy or the United States Air Force Academy. That is because Appellants explicitly do not seek a stay of that portion of the preliminary injunction enforcing the Retention Directive, which governs transgender individuals currently serving within the military. But under federal law, those individuals "serv[ing] as a cadet at the United States Military, Air Force, or Coast Guard Academy, or as a midshipman at the United States Naval Academy" are as a matter of statutory law on "active duty" and in the "active military, naval, or air service," 38 U.S.C. §§ 101(21)(D) & (24)(A); see also 38 U.S.C. § 1965(1)(D). In addition, federal law generally accords Cadets and Midshipmen the same process as other active duty personnel in the event the service moves to separate them for physical and/or medical reasons. See 10 U.S.C. §§ 1217-1218. Federal law identifies Midshipman and Cadet as a rank with its own pay rate, 37 U.S.C. § 203(c), and individuals attending the military academies are appointed by the President, inducted into the military, have a service obligation, swear an oath to protect and defend the United States, wear military uniforms, receive military pay and allowances, and are subject to the Uniform Code of Military Justice during their service. 10 U.S.C. §§ 801, 802, 4346, 6959; 37 U.S.C. §§ 203, 422. Cadets and Midshipmen may be awarded and wear the National Defense

Service Medal, which is awarded for "honorable active service." SECNAVINST 1650.1H(8)(b)(1), (4) (emphasis added); see also 32 C.F.R. § 578.23(a) (2006); 10 U.S.C. § 6264 (eligibility for Navy and Marine Corps Medal). Because Appellants do not seek a stay of the retention provision of the preliminary injunction and, in arguing that Midshipman Kibby is subject to the Accession Directive, have failed to address federal statutes bearing on the active military status of Cadets and Midshipmen, Appellants have as yet offered no rational explanation for treating United States military academy Midshipmen and Cadets differently from those others on active duty who fall within the unchallenged (at this stage) Retention Directive. Granting a stay as to transgender individuals within the United States military academies would directly impede and impair their advancement through the Midshipman and Cadet ranks towards commissioning as officers and their current and immediate career and educational progression.

Second, Appellants have also failed to demonstrate that allowing the accession of transgender troops on January 1, 2018, will cause them irreparable harm. As the district court observed in declining to grant a stay, Appellants rely on "sweeping and conclusory statements" without "explain[ing] what precisely needs to be completed by [January 1, 2018,] in order for [Appellants] to be prepared to begin transgender accessions." Order Denying a Stay, Doe 1 v. Trump, No. 17-1597, at 5 (Dec. 11, 2017) (Add. 5). With respect to implementation of transgender accession into the military, Appellants did not even inform this court of a Defense Department memorandum issued December 8, 2017, that provides detailed directions and guidance governing "processing transgender applicants for military service," directions that the Secretary of Defense's Department commanded "shall remain in effect until expressly revoked." See Department of Defense, United States Military Entrance Processing Command, Policy Memorandum 2-5, Transgender Applicant Processing, at 1 (Dec. 8, 2017). That open-ended directive documenting concrete plans already in place to govern accession was issued before the district court ruled on the motion for a stay pending appeal.

Moreover, transgender people are already serving openly in the military. See DODI 1300.28(1.2)(a) (premising Carter policy "on the conclusion that open service by transgender persons . . . is consistent with military service and readiness"); ALNAV 053/16(2), (5)(a)(1)-(4), (7)(a)(5) (permitting transgender Sailors and Marines to serve openly, effective August 5, 2016). And Appellants have not shown that any training or medical demands associated with the accession of transgender troops—all of whom must be medically stable for 18 months before entry (absent a waiver)—are different in kind or degree from the demands associated with the retention of existing troops. To

the extent Appellants argue that "[t]he preliminary injunction . . . harms the military by forcing it to implement a significant change to its accession standards before it even completes its study of the issue," Appellants' Mot. at 15, Appellants have failed to demonstrate that the study they wish to undertake is motivated by any necessity separate and apart from compliance with the Presidential Memorandum. Nor do they identify what further information is needed beyond the extensive study already undertaken and the steps already completed for the accession of transgender individuals. Appellants, in other words, have provided no non-conclusory factual basis or military justification for their apparent position that the extensive study already conducted prior to President Trump's policy shift was inadequate or otherwise in need of supplementation.

Appellants argue that a partial stay should be granted to permit Secretary of Defense James N. Mattis to "exercis[e] his own discretion to defer adopting the Carter policy for a limited time." Appellants' Mot. at 2. But nowhere in the filings or record before this court have Appellants advised that Secretary Mattis actually desires to or, absent the district court injunction, would make a decision, wholly independent of the Presidential Memorandum or directive, to extend the January 1, 2018, deadline for accession. Nor have Appellants identified anywhere in their stay papers or the record before this court any proposed independent grounds on which Secretary Mattis would extend the deadline, or the scope of Secretary Mattis's asserted authority to act in this matter entirely independently of the specific directions of the Commander in Chief. Cf. 10 U.S.C. § 113(b) ("The Secretary is the principal assistant to the President in all matters relating to the Department of Defense. Subject to the direction of the President and to this title and section 2 of the National Security Act of 1947 (50 U.S.C. 3002), he has authority, direction, and control over the Department of Defense." (emphases added)). Appellants cite to no relevant delegations of authority within any federal statute, regulation, or other legal source that could assist this court in understanding the nature and scope of the asserted independent legal authority. Nor have they proffered any factual or legal basis on which Secretary Mattis might determine that such an extension is warranted. Appellants argue instead that Secretary Mattis extended the compliance deadline from July 1, 2017 until January 1, 2018. But nothing in that two-sentence press release says or even suggests that the decision was made independently of the President's direction. See Statement by Chief Pentagon Spokesperson Dana W. White on Transgender Accessions, Release No: NR-250-17 (June 30, 2017) (Add. 96). And the Secretary's August 29, 2017 statement makes clear that his actions are being undertaken to "carry out the president's policy direction." See

Statement by Secretary of Defense James Mattis on Military Service by Transgender Individuals, Release No: NR-312-17 (Aug. 29, 2017) (Add. 95).

Third, Appellants have failed to show that issuance of the stay will not substantially injure the other parties to the proceeding. Appellants argue that Plaintiffs Kibby and Kohere will not be eligible to accede until, at the earliest, 2020, but in addition to ignoring the active-duty military status of Midshipmen and Cadets, that argument also fails to recognize that Plaintiffs' inability to accede in the future or to progress through higher Midshipman ranks within the Naval Academy disqualifies them from educational opportunities now. Plaintiff Kohere is currently ineligible to contract as a cadet in the ROTC, Add. 115-16, and Appellants have not shown that Plaintiff Kibby will be allowed to remain in the Navy and continue his education at the Naval Academy if he is ineligible to receive a commission upon graduation, see Supplemental Addendum 98.

Fourth, given that the enjoined accession ban would directly impair and injure the ongoing educational and professional plans of transgender individuals and would deprive the military of skilled and talented troops, allowing it to take effect would be counter to the public interest.

Finally, in the balancing of equities, it must be remembered that all Plaintiffs seek during this litigation is to serve their Nation with honor and dignity, volunteering to face extreme hardships, to endure lengthy deployments and separation from family and friends, and to willingly make the ultimate sacrifice of their lives if necessary to protect the Nation, the people of the United States, and the Constitution against all who would attack them.

For those reasons, Appellants have not met their burden of demonstrating that a stay pending appeal is warranted. Given Appellants' failure to make a compelling case on the current record that any of the stay factors weigh in their favor, the court denies the stay. It is

**FURTHER ORDERED**, on the court's own motion, that the parties brief the merits of this appeal pursuant to the following briefing schedule:

| | |
|---|---|
| Appellants' Brief | January 5, 2018 |
| Appendix | January 5, 2018 |
| Appellees' Brief | January 16, 2018 |

# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT
_____

**No. 17-5267**                          **September Term, 2017**

Reply Brief                    January 19, 2018

It is

**FURTHER ORDERED** that oral argument be scheduled before this panel on Friday, January 26, 2018, at 10:00 a.m. in Courtroom 31.

To enhance the clarity of their briefs, the parties are urged to limit the use of abbreviations, including acronyms.  While acronyms may be used for entities and statutes with widely recognized initials, briefs should not contain acronyms that are not widely known.  See D.C. Circuit Handbook of Practice and Internal Procedures 41 (2017); Notice Regarding Use of Acronyms (D.C. Cir. Jan. 26, 2010).

Parties are directed to hand deliver the paper copies of their briefs to the Clerk's office on the date due.  All briefs and appendices must contain the date that the case is scheduled for oral argument at the top of the cover.  See D.C. Cir. Rule 28(a)(8).

**Per Curiam**

FOR THE COURT:
Mark J. Langer, Clerk

BY:    /s/
Michael C. McGrail
Deputy Clerk